## 16322

DAY v. DAY *ET AL.*

(58 S. E. (2d) 83)

*Messrs. Charles & Charles,* of Greenwood, *for Appellant,*

*Messrs. Nicholson & Nicholson,* of Greenwood, *for Respondents,*

March 2, 1950.

FISHBURNE, Justice.

James Day was accidentally killed in Greenwood County on November 20, 1948, while working as an employee of Greenwood Mills. His death arose out of and in the course of his employment which was subject to the provisions of the Workmen's Compensation Act, Section 7035-1 *et seq.* of the Code. His alleged widow, the appellant, Maggie Lee Day, filed her claim with the Commission claiming compensation as his widow, and, in the alternative, as a dependent. The opposing parties are the father, the brothers and the sister of James Day, who are his next of kin. All of the claimants are negroes.

Greenwood Mills, employer of James Day and self-insurer, admits that he was killed in the course of his employment, and agrees to pay death benefits under the provisions of the Workmen's Compensation Act, subject to a judicial determination of the parties entitled thereto.

On March 22, 1949, the Industrial Commission awarded compensation to Maggie Lee Day as a dependent of James Day, payable weekly, together with funeral expenses,—the total amount payable under the award not to exceed Six Thousand Dollars. Upon appeal to the circuit court, the finding and award of the Commission was reversed. The Court held that Maggie Lee Day was not a lawful dependent of James Day, and ordered that payment be made to the

respondents as next of kin in accordance with Code Section 7035-43, which provides: "If a deceased employee leaves no dependents, the employer shall pay to the next of kin as herein defined the commuted amount provided for in § 7035-41 for whole dependents, less burial expenses."

The facts giving rise to the controversy are substantially as follows: Maggie Lee Day married Marion Duncan on February 4, 1919. After the marriage they resided in the Callison section of Greenwood County, living together as man and wife. Within two or three years they separated; the record does not give any cause for the separation. At the time of their marriage, Maggie Lee was fourteen or fifteen years old, and her husband, Marion Duncan, was about eighteen. They had no children. After their separation, the appellant moved to Greenville, but returned to Greenwood on a visit after about two years, at which time she saw Marion Duncan, who told her that he had married again. She testified that as a result of this information, she received the impression that he was no longer her husband.

It is clearly evident from appellant's testimony that following the conversation with her husband, she believed that she had the moral and legal right to marry again. This conversation with Marion Duncan took place in 1923. She returned to Greenville and lived there for six years, returning in 1930 to Greenwood, where she continued to live. On November 3, 1934, making no inquiry with reference to her husband, Marion Duncan, and making no effort to locate him, or to discover whether he were dead or alive, the appellant married James Day, the decedent, and lived with him as his wife until his death in 1948. They had no children. During this entire period, Marion Duncan continued to reside in the Callison section of Greenwood County, only five miles from the city of Greenwood where Maggie Lee and her second husband, James Day, made their home. Making no inquiry as to the whereabouts of her first husband, appellant says that she had no information as to his exist-

ence, never saw him after 1923, and did not know that he was still alive until after the death of James Day, in 1948.

The trial court adjudged that Maggie Lee's marriage to James Day, the second husband and the deceased employee, was unlawful, and not in good faith.

It is contended by appellant that although her first husband is still alive, and there has been no divorce, she committed no wrong or fraud under the criminal or civil law, because at the time of her second marriage her first husband, Marion Duncan, had been absent for seven years and more, unheard of, and not known by her to be alive. Eleven years had passed between the date of separation, in 1923, and the date of her second marriage, in 1934. During this time, Marion Duncan had married two other women, and had reared a large family of children by the last wife.

Appellant bases her contention as to presumption of death of the first husband after an alleged absence of seven years, on Section 8568 of the Code, which reads: "All marriages contracted while either of the parties has a former wife or husband living shall be void: provided, that this section shall not extend to a person whose husband or wife shall be absent for the space of seven years, the one not knowing the other to be living during that time; nor to any person who shall be divorced, or whose first marriage shall be declared void by the sentence of a competent court."

A mere marriage ceremony between a man and a woman, where one of them has a living wife or husband, is not a marriage at all. Such a marriage is absolutely void, and not merely voidable. *Davis v. Whitlock*, 90 S. C. 233, 73 S. E. 171, 175, Ann. Cas. 1913D, 538. As held in *Davis v. Whitlock, supra*, the statute, Sec. 8568, however, does have an important effect on the status of the spouse *who has been abandoned for seven years or more*. "* * * He or she may marry again, and, while the wife or husband remains absent, the parties under the second marriage are entitled to full legal recognition as man and wife with regard

to the enforcement of rights and the assumption of obligations as such; but all this must be at the risk that, if it turns out that the first spouse was alive at the time the second marriage was undertaken, then the second marriage will be void, and all supposed rights acquired under it will fall to the ground." *Davis v. Whitlock, supra.*

As will be seen from the foregoing quotation, the presumption of death after a lapse of seven years enures to the benefit of the spouse who has been abandoned. But as shown by the record, there is no evidence that the first husband, Marion Duncan, was absent for a period of seven years, or that he abandoned his wife. Apparently, they mutually agreed to separate, and she left his abode and went to Greenville where she remained for two years before returning to the city of Greenwood. The husband, Duncan, continued to reside in the Callison section of Greenwood County, and never left this community, which is, as above stated, only about five miles from the city of Greenwood.

The general rule which is followed in this jurisdiction is that a continued absence of seven years from one's home or place of residence, unexplained, with no tidings of or from the absent person, either directly or indirectly, by his relatives or friends, or by anyone with whom he would naturally communicate, creates the presumption of death, unless there are facts or circumstances which tend to rebut this presumption. *Dill v. Sovereign Camp, W. O. W.,* 202 S. C. 401, 25 S. E. (2d) 285; *in re Duncan's Estate,* 190 S. C. 211, 2 S. E. (2d) 388. However, in order to obtain the benefit of the presumption, evidence must be introduced that diligent search and inquiry have been made.

The general rule and its application is quoted *in Re Duncan's Estate, supra* [190 S. C. 211, 2 S. E. (2d) 390], from 16 Am. Jur., Sec. 33, Page 28, as follows: " '* * * the generally accepted rule is that to raise a presumption or a *prima facie* case of death from seven years' absence, it

must appear that diligent search and inquiry have been made, without result, to ascertain the whereabouts of the missing person  *   *   *  The inquiry should embrace all reasonably patent sources of information which the circumstances of the case suggest, including an inquiry made of the persons and at the places where news of him, if living, would most probably be had. However, the places, person, and sources of information required are only those which a reasonably prudent person under the same or similar circumstances would deem to be sufficient.  *   *   *  The question of the sufficiency of the search and inquiry is generally one of fact for determination by the jury, under proper instructions from the court.  *   *   *.' "

In the *Duncan case,* it was held that diligent search and inquiry, in accordance with the rule, was made, the court stating the circumstances as follows: "Although appellant made no efforts to locate Grisham prior to her second marriage, yet the patent sources of information which the circumstances of this case suggest are barren and there is no evidence that inquiries would have been productive of information."

A different situation prevails here. We reiterate that the record shows that Marion Duncan, the first husband, continued to live in the neighborhood of their original home during the entire period in question, only five miles from Greenwood, where Maggie Lee resided continuously from 1930 until 1948, the year of the death of her second husband, James Day. And we assume that she still lives there. In her testimony, she says that she made no inquiry whatever to determine whether he was alive, or to determine where he might be. It is inconceivable that if any inquiry had been made in Callison neighborhood, she would not have learned that he was still alive and resided there. The inference is clear that she believed herself legally qualified to marry again because her first husband, Marion Duncan, had taken unto himself another wife.

Under the circumstances above stated, no presumption could arise as to the death of Marion Duncan.

It follows that the marriage of Maggie Lee to James Day was bigamous and void from its inception. She cannot, therefore, successfully claim any benefit under Section 7035-42 as the widow of James Day, the deceased employee.

It is contended, however, that she is entitled to claim and receive benefits under that provision of Sec. 7035-42 of the Workmen's Compensation Act which provides: "A widow, a widower, and/or a child shall be conclusively presumed to be wholly dependent for support upon the deceased employee. *In all other cases questions of dependency, in whole or in part, shall be determined in accordance with the facts as the facts may be at the time of the accident  *  *  *.*" (Italics ours.)

The question then is, can it be held in this case that Maggie Lee comes within the purview of the quoted section of the Act as a dependent. The precise question here presented has never been decided by this court. The Commission held: "That Maggie Lee Day, the alleged widow, was at the time of the deceased's death and for three months prior thereto wholly dependent upon him for support and on account thereof is entitled to the full benefits payable under the provisions of the Act, the deceased having left no other whole dependents."

The Circuit Court held: "The conclusion is inescapable that the word 'dependent' as used in our Workmen's Compensation Law, refers to those lawfully dependent, and that it is against the public policy of our State to make an award to one in a bigamous relationship with a deceased workman."

And, in accordance with the court's decree, it was ordered that payment be made to the respondents as the next of kin.

The record shows beyond question that appellant was at the time of the death of James Day wholly dependent upon him for support and that this situation prevailed throughout their life together. She was able to do some work, but was

not strong enough to perform any sustained labor. An examination of the record shows that for fourteen years she and the deceased lived together as husband and wife in the city of Greenwood, conscientiously and above reproach in accordance with the putative marital relationship. The fact remains, however, that it was an illicit relationship under the law.

It is generally held that unless a Workmen's Compensation Act specifically sets forth who shall be considered wholly or partially dependent on the earnings of an employee, dependency and the extent thereof are to be determind as questions of fact in accordance with the facts as they exist at the time of the injury to the employee.

Our Act does not define dependency, and does not specifically indicate who are dependents, except the designated persons who are conclusively presumed to be wholly dependent upon the deceased employee. State generally, a dependent is one who looks to another for support and maintenance; one who is in fact dependent—one who relies on another for the reasonable necessities of life.

In Volume 1 Schneider's Workmen's Compensation Law, at Page 898, it is said that dependency "does not include the maintenance of others whom the deceased is under no legal obligation to maintain    *    *    *." This definition, however, has been modified by later authority to include not only legal obligation but moral obligation, and voluntary contributions; if relied upon for support. 58 Am. Jur., Sec. 126, Page 686.

In *Commonwealth ex rel. State Highway Commission v. McGuire,* 188 Va. 444, 50 S. E. (2d) 284, the Virginia Court, construing the dependency section of the Workmen's Compensation Act of that State—which is identical with ours—held that a child whose custody and support were assumed by the employee for seven years was a "dependent" of the employee within the meaning of the Compensation Act so as to be entitled to compensation on account of the

employee's death, although the child was not related to the employee, was never adopted by him, and the child's mother was financially able to care for it.

We are confronted here with the question of whether under our Compensation Act, a woman, with a living husband, who lives in illicit relationship with another man, regardless of good faith, can be considered a dependent of the latter within the meaning of the Compensation Law.

In the case of *Meton v. State Ind. Ins. Dept.*, 104 Wash. 652, 177 P. 696, the Supreme Court of Washington had before it a set of facts similar in some respects to those in the case at bar. Claimant and the deceased in that case had lived together for about six years under an erroneous belief that they were lawfully married, and it was held that the claimant was not entitled to an award on the ground of being a dependent of the deceased. The case is of little aid to us because the word "dependent", in the Washington law, was specifically defined, and the court holds that the claimant there did not identify herself as one of those coming within the definition of the word "dependent" as set out in their statute.

In the case of *Temescal Rock Co. v. Industrial Accident Commission*, 180 Cal. 637, 182 P. 447, 13 A. L. R. 683, the California Supreme Court had this question before it for decision. In that case the claimant and deceased were of foreign origin, ignorant and unacquainted with our laws or the legal requirements of marriage. They were both competent to enter into the marriage state, and from a county clerk of their county procured a marriage license, which they honestly believed was sufficient to constitute a lawful marriage, and continued afterward to live and cohabit together to the death of the supposed husband. In this case the California Court held that the applicant was entitled to an award. The case is made to turn wholly on the question of the good faith and honest intention and belief of the parties, who were competent to enter the marriage relation, that they had

done all that was necessary to make them husband and wife. In the case now before us, however, the appellant was not competent to remarry, because she had a living husband.

In *Scott v. Independent Ice Co.*, 135 Md. 343, 109 A. 117, 118, the claimant testified that she had been living with the deceased for eight years as husband and wife, although never married. They had two children who survived the father, and were living with the claimant and the father as members of the family at the time of his death. Under these facts the court held that the claimant was not entitled to compensation, and among other things it stated:

"The decisions are for the most part in accord in holding that a woman living with an employee, as man and wife, when he died as the result of an injury, is not entitled to compensation under Workmen's Compensation Laws if not legally married to him although dependent upon him. Illustrations of the extent to which courts have gone in so holding may be found in *Hall v. Industrial Commission*, 165 Wis. 364, 162 N. W. 312, L. R. A. 1917D, 829 * * * and *Meton v. State Ind. Ins. Dept.* (*supra*). Those were hard cases, as the parties believed they were legally married, but the courts could not give them relief, or refuse to be governed by the law, but had to administer the law as they found it * * *.

"Without deeming it necessary to cite other authorities on the asserted right of the mother to compensation under this act, we are satisfied that she was not so entitled, and we have no hesitation in agreeing with the decision of the lower court as to her."

To the same general effect is the case of *Armstrong v. Industrial Comm.*, 161 Wis. 530, 154 N. W. 844, and *Baldwin v. Sullivan*, 201 Iowa 955, 204 N. W. 420, 208 N. W. 218.

The facts of this case appeal strongly to our sympathy on behalf of appellant. It may well be that due to her position and situation in life, she believed that

she was legally married to James Day, and as hereinabove stated she conducted herself as a dutiful wife; but we cannot escape the conclusion that it was not the intention of the legislature to permit a woman to be classed and considered as a dependent within the meaning of our Compensation Act who lives in illicit relationship with a man to whom she is not legally married. We have as an outstanding fact in this case that appellant's first husband, Marion Duncan, to whom she was lawfully married, is still living. Undoubtedly, to recognize such a bigamous relationship as coming within the purview of the Compensation Law would be against the public policy of this State.

A fundamental rule in the construction of a statute is to consider the effects or consequences of the interpretation placed on such statute. We base our decision on the issue before us, in the absence of express legislation, on the ground of public policy. To hold otherwise might well give rise to great abuses in the administration of the Workmen's Compensation Act. Persons consciously living together in illicit relationship may endeavor to take advantage of the situation for their own gain. Marriage is very properly regarded as the foundation of human society. It is generally recognized that the public policy relating to marriage is to foster and protect it, and to make it a permanent and public institution. Indulgence of the Court or Commission in behalf of erring parties because of race or circumstances, will not tend to elevate regard for law or social standards in our State.

In our opinion, if it had been the intention of the legislature to sanction an adulterous relationship as constituting a basis for dependency, express provision would have been made therefor in the Compensation Act.

Judgment affirmed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.