**Myrtis DAY, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. A. No. 79–2204–1.**

United States District Court,
D. South Carolina,
Columbia Division.

Aug. 11, 1981.

Henry W. Kirkland, Kirkland, Aaron & Alley, Columbia, S. C., for plaintiff.

Jack L. Marshall, Asst. U. S. Atty., Columbia, S. C., for defendant; Carl N. Harper, Regional Atty., James N. Stephens, Deputy Regional Atty., and Noel Benedict, Asst. Regional Atty., Dept. of Health and Human Affairs, Atlanta, Ga., of counsel.

## ORDER

HAWKINS, District Judge.

This action for review of a final decision of the Secretary of Health and Human Services (Secretary herein) is before the court with the Report and Recommendation of the United States Magistrate. The matter was reviewed by the Magistrate pursuant to the court's order of reference and Section 636 of Title 28 of the United States Code. By statute, the court is charged with making a *de novo* determination of any portions of the Magistrate's report to which specific objection is made. 28 U.S.C. § 636(b)(1). It may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate or recommit the matter to him with instructions. *Id.* In the instant case, the Magistrate has recommended that the Secretary's motion for judgment on the pleadings be granted. Neither party has filed exceptions to the Magistrate's report.

This case arises from the tangled matrimonial history of one Myrtis Day, a 55 year old female with an eighth grade education. On May 1, 1941, she married Robert Lee Mobly in Lexington County, South Carolina. (Tr. 23). Two children were born of this marriage, Robert Lee Mobly, Jr. and Henry Mitchell Mobly. *Id.* This marriage ended tragically on February 10, 1949, when Mr. Mobly was killed in a train accident in Charleston, South Carolina. (Tr. 24).

The foundation for the plaintiff's present problems was laid two years later. On November 2, 1951, she married James C. Crews, Jr., in Richland County, South Carolina. (Tr. 10, 24). Shortly after their marriage, Mr. Crews moved his family to Saint Augustine, Florida.[1] (Tr. 10, 73). According to the plaintiff, Mr. Crews would leave on unannounced, mysterious trips which would last for as long as eight weeks. (Tr. 73, 74). During Mr. Crews' absences, his parents often had to feed his family. (Tr. 73, 75). It was during this period that plaintiff held her last job. She worked as a waitress in Saint Augustine, Florida, for several weeks during 1955. (Tr. 62).

As a result of Mr. Crews' neglect, the plaintiff left him in 1959 and returned to Columbia, South Carolina. (Tr. 10, 74, 134). When she left him, he told her that he was going to divorce her.[2] (Tr. 10, 74, 134). The plaintiff did not see him again until 1962 when he visited her in Columbia. (Tr. 10, 134). At that time he told her that he had not divorced her. After spending one evening with the plaintiff, Mr. Crews told her that he could not live with her and that he still intended to divorce her.[3] (Tr. 10, 134–135). This was the last time that the plaintiff heard from or saw Mr. Crews. (Tr. 135).

Although the plaintiff never received a final divorce decree terminating her marriage to Mr. Crews, she proceeded to remar-

---

1. It appears that St. Augustine was the home of his parents. (Tr. 26, 75). On December 20, 1951, the plaintiff bore Crews a daughter, Leona Diane. (Tr. 28).

2. On July 27, 1960, the plaintiff had her second child by Crews, Randy Eugene Crews. (Tr. 27).

3. It was during this evening that she conceived her third child by Crews, Albert Crews, who was born in March of 1963.

ry in the belief that he had divorced her. (Tr. 11, 75, 135). On December 3, 1963, the plaintiff married her third husband, William Day, in Orangeburg, South Carolina. (Tr. 11, 28). Upon Mr. Day's retirement, plaintiff applied for wife's insurance benefits. (Tr. 94–97). She did this at Mr. Day's insistence. (Tr. 72–73). Her application was approved by the Secretary and she began to receive monthly checks. (Tr. 10, 103).

The plaintiff's third marriage lasted until the early morning of July 13, 1977. About three a. m., Mr. Day beat her and forced her out of their home. (Tr. 36). She subsequently filed for a divorce. (Tr. 55, 112). Mr. Davis counterclaimed for an annulment on the grounds that the plaintiff had never been divorced from Mr. Crews. (Tr. 56, 112). After an unsuccessful search of the records of the Florida Department of Health and Rehabilitative Services, Division of Health, for a record of plaintiff's divorce from Crews during the period 1951 through May 24, 1978, the Lexington County Court of the Eleventh Judicial Circuit of South Carolina annulled. It predicated its action on the fact that there was no record in Florida of a divorce of Crews from the plaintiff. The Family Court found that the plaintiff was still legally married to Mr. Crews on December 3, 1963. She, therefore, could not have entered into a valid marriage with Mr. Day on that date. As a result, it annulled her marriage to Mr. Day effective August 16, 1978. (Tr. 112–113).

While plaintiff's divorce action against Mr. Day was pending, James C. Crews, Jr., died in New Orleans, Louisiana, on August 13, 1978, of arteriosclerotic heart disease and partial occlusion of the right and left coronary arteries. (Tr. 147). The Louisiana Certificate of Death listed his marital status as "divorced." *Id.* Although it is not clear from the record, this document does not appear to have been before the Family Court during the pendency of the plaintiff's divorce action. *See,* Tr. 112–113. It was, however, before the Administrative Law Judge during the entitlement proceedings. (Tr. 25–26, 31, 64, 147). In fact, the Administrative Law Judge entered Crews'

death certificate into evidence as Exhibit 29. (Tr. 31, 147). According to the plaintiff, it was sent to her by a daughter of Mr. Crews who lived in New Orleans. (Tr. 63).

On December 29, 1978, the Secretary terminated the plaintiff's benefits effective January 1970 on the grounds that she had never been entitled to receive them. (Tr. 109). He justified the termination on two grounds, the first of which was that the plaintiff was not divorced from Mr. Crews at the time she married William D. Day, Sr. (Tr. 111), and, second, that plaintiff knew that she was not free to marry Mr. Day. *Id.* As a result of these findings, the Secretary demanded that the plaintiff repay the benefits that she had received on Mr. Day's behalf. (Tr. 109). He also advised her that repayment could be waived if she could show that the overpayment was not her fault and that she had accepted the payments in good faith. (Tr. 109–110). He further advised the plaintiff that the waiver was contingent on her being able to show that a repayment would be a hardship on her or "it would be unfair for some other reason." (Tr. 109–110).

After receiving notice of the Secretary's action, the plaintiff requested a hearing before an Administrative Law Judge (ALJ). This hearing was held in Columbia, South Carolina, on May 21, 1979. In his decision dated July 31, 1979, the ALJ found that the plaintiff had never been entitled to wife's insurance benefits. (Tr. 13). He also found that the overpayment was plaintiff's fault and that, as a consequence, repayment could not be waived. This determination became the final decision of the Secretary when it was affirmed by the Appeals Council on September 18, 1979. (Tr. 3). The plaintiff then filed suit in this court pursuant to Title 42, United States Code Section 405(g).

The only issue before the court is whether the decision of the Secretary is supported by substantial evidence and based on proper legal standards. After reviewing the record, the applicable law, and the briefs of counsel, the court is of the opinion that the

decision of the Secretary is not based upon proper legal standards and, therefore, is not supported by substantial evidence. For the reasons set forth below, the decision of the Secretary is reversed, and the case is remanded for further proceedings consistent with this order.

As the ALJ noted in his decision, Title 42, United States Code Section 416(h), controls the disposition of this case. It provides, in relevant part, that· an applicant shall be considered married if the courts of the state in which she is domiciled would find that the applicant and the insured were validly married "*at the time such applicant files such application ...*" 42 U.S.C. § 416(h)(1)(A) (emphasis added). The regulations implementing the statute define marriage to include a common law marriage, "considered valid under certain State laws even though there was no formal ceremony." 20 C.F.R. § 404.726(a). Since the plaintiff was domiciled in South Carolina when she applied for benefits, the domestic relations law of that state is the controlling law in this case.

■ In applying the recoupment statutes and regulations, one caveat must be kept in mind. These statutes and regulations assume that situations will arise in which improper payments are made by the Secretary and received and retained by the recipients. *Cucuzzella v. Weinberger*, 395 F.Supp. 1288, 1295 (D.Del.1975). Although such recipients are not entitled to the payments, the law assumes that the payments may have occurred through no fault of theirs. *Id.* The recoupment statutes and regulations do not assume that such recipients know the law nor hold them negligent because of their ignorance. *Id.* Instead, the law requires a careful evaluation of the surrounding circumstances before a recipient is found at fault and liability for repayment imposed. *Id.* In this context, I find there are several factors that the ALJ failed to consider.

As has already been noted, South Carolina's domestic relations law will control the outcome of this case. The inquiry which must be made under this law is whether a South Carolina court would have found the plaintiff married to Mr. Day on the date on which she applied for wife's benefits. 42 U.S.C. § 416(h)(1)(A). The court's principal task in this case is to determine what the South Carolina courts would have thought on issue about which they were never given an opportunity to think.[4]

■ In order to answer this question, the South Carolina courts would have looked to the state's bigamy statute as construed by the State Supreme Court. It prohibits marriages "contracted while either of the parties has a former wife or husband still living." S.C.Code Ann. § 20–1–80. There are three exceptions to this law, only the first of which is germane to this case. This exception provides that "this section shall not extend to a person whose husband or wife shall be absent for the space of seven years, the one not knowing the other to be living during that time ...." *Id.* In construing this statute, the South Carolina Supreme Court has said that a wife may remarry after husband has been absent for seven years. *Day v. Day*, 216 S.C. 334, 339, 58 S.E.2d 83, 85 (1950); *In re Duncan's Estate*, 190 S.C. 211, 216, 2 S.E.2d 388, 390 (1936); *Davis v. Whitlock*, 90 S.C. 233, 244, 73 S.E. 171, 175 (1911); *Boyce v. Owens*, 19 S.C.L. (1 Hill) 8, 10 (1833); *Woods v. Woods*, 2 S.C.L. (2 Bay) 476, 478 (1802). An individual who invokes this exception must make a reasonable effort to locate the missing spouse before remarrying. *Day*, 216 S.C. at 340, 58 S.E.2d at 85; *see, In re Duncan's Estate*, 190 S.C. at 218, 2 S.E.2d at 391. She is not required, however, to make an extensive search, but only to inquire of those sources "which a reasonable prudent person under the same or similar circumstances would deem sufficient." *Day*, 216 S.C. at 340, 58 S.E.2d at 85, citing, *In re*

---

**4.** I am paraphrasing Judge Friendly's famous opening sentence in *Nolan v. Transocean Air Lines*, 276 F.2d 280, 281 (2d Cir. 1960), in which he said: "Our principal task, in this diversity of citizenship case, is to determine what the New York courts would think the California courts would think on an issue about which neither has thought."

*Duncan's Estate*, 190 S.C. at 218, 2 S.E.2d at 390.

■ When a person disappears from his home without explanation and remains absent without communicating directly or indirectly with his family or friends, he is presumed dead under South Carolina law. *Ligon v. Metropolitan Life Ins. Co.*, 219 S.C. 143, 149, 64 S.E.2d 258, 261 (1951); *Day*, 216 S.C. at 339, 58 S.E.2d at 85; *In re Duncan's Estate*, 190 S.C. at 216, 2 S.E.2d at 390. If these patent sources of information are barren, a prima facie case of death arises which, if not rebutted, becomes conclusive. *Ligon*, 219 S.C. at 149, 64 S.E.2d at 261. This presumption prevails over the presumption of the continuance of life. *Id.*

■ At her hearing before the ALJ, the plaintiff testified that the last time she heard from Mr. Crews was in 1962. (Tr. 73). Although his family knew where she lived, they did not communicate with the plaintiff concerning Mr. Crews until after his death in 1978. If these facts had been before a South Carolina court on the date of the plaintiff's application for benefits, it would have found that she had a *prima facie* case for the death of Mr. Crews. If her *prima facie* case was not rebutted, it would have become conclusive. *Ligon*, 219 S.C. at 149, 64 S.E.2d at 261. Under the circumstances, I find that a South Carolina court would have found that the plaintiff had been capable of remarriage since at least 1969.

■ Of course, the problem from this case arises from the fact that the plaintiff remarried before the end of the seven year period. This raises the issue of the nature of her relationship with Mr. Day on the date of her application. There are two theories under which a South Carolina court could have found the plaintiff married to Mr. Day. Since South Carolina recognizes common law marriage, *see Kirby v. Kirby*, 270 S.C. 137, 241 S.E.2d 417 (1978), it could have found that the plaintiff and Mr. Day had entered into a common law marriage after 1969. If a relationship between a man and a woman was illicit at its incep-

tion, it does not ripen into a common law marriage once the impediment to marriage has been removed. *Kirby*, 270 S.C. at 141, 241 S.E.2d at 416. Instead, South Carolina law presumes that the relationship retains its illicit nature after the impediment is removed. *Id.* In order for a common law marriage to arise, the parties must agree to enter into a common law marriage after the impediment is removed. *Id.* The individual who asserts the common law marriage must do so by the preponderance of the evidence. *Id.* A formal declaration of intent to enter a common law marriage is not required. *Kirby*, 270 S.C. at 140, 241 S.E.2d at 416, citing, *Ex Parte Blizzard*, 185 S.C. 131, 133, 193 S.D. 633, 634 (1937). The parties' intentions may be proven from the surrounding circumstances. *Kirby*, 270 S.C. at 140, 241 S.E.2d at 416; *Ex Parte Blizzard*, 185 S.C. at 133, 193 S.E. at 634. After the removal of the impediment to their marriage in 1969, the Days continued to live together as man and wife for approximately eight years. (Tr. 36). The critical date remains the date the plaintiff filed for wife's benefits on January 30, 1970. This was approximately a year after the removal of the impediment to their marriage. During this time, the Days had lived together and held themselves out as man and wife. Under these circumstances, a South Carolina court would have held that a valid common law marriage had arisen between the Plaintiff and Mr. Day. *See, Jeanes v. Jeanes*, 255 S.C. 161, 165, 177 S.E.2d 537 (1970).

■ The second theory under which a South Carolina court would have found the Days' common law marriage to be valid arises from the presumption of the validity of a second marriage. Where the same person enters into a conflicting marriage, the law presumes that the second marriage is valid. *Hallums v. Hallums*, 74 S.C. 407, 411, 54 S.E. 613, 614 (1905). This presumption has been referred to as the strongest presumption known to the law, and, unless other facts or circumstances are present, it prevails over other presumptions, including that of the validity or continuance of a prior marriage. 12 S.C.L.Q. 355, 363 (1959),

citing, *Roberts v. Roberts*, 124 Fla. 116, 167 So. 808 (1936). Where the existence of a valid first marriage has been established, the presumption operates in favor of the later marriage. The law will presume that the first marriage was dissolved at the time of the second. Although he will be required to prove a negative proposition, the party who attacks the validity of a second marriage bears the burden of proof. *See, Scheper v. Scheper*, 125 S.C. 89, 104, 118 S.E. 178, 183 (1923). I find that the operation of the presumption of the validity of the second marriage would have led a South Carolina court to hold that the Days were married on January 30, 1970.

 Under the Administrative Procedure Act, a reviewing court is required to set aside administrative decisions which are: "... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights; (D) without observance of procedure required by law ...." 5 U.S.C. § 706(2); *Ferran v. Fleming*, 293 F.2d 568, 571 (5th Cir. 1961). A decision predicated on an erroneous interpretation of the applicable law is not supported by substantial evidence and, therefore, must be reversed. *Ferran*, 293 F.2d at 571; *Freeman v. Harris*, 509 F.Supp. 96, 101 (D.S.C.1981); *Dickson v. Secretary of Health, Education and Welfare*, 489 F.Supp. 204, 206–07 (D.Mass.1980). For the reasons set forth above, I find that a South Carolina court would have ruled that the plaintiff and Mr. Day were married on the day on which she applied for benefits. I find that the ALJ's failure "to so rule is so contrary to established law as to be an arbitrary and capricious ruling with the meaning of 5 U.S.C. § 706(2)...." *Dickson*, 489 F.Supp. at 206. As a result, his contrary ruling is not supported by substantial evidence within the meaning of Title 42, United States Code Section 405(g). His decision finding the plaintiff at fault is reversed. The case is remanded to the Secretary for a determination of whether a recoupment would defeat the purpose of the Act or be against

equity and good conscience. 20 C.F.R. § 404.509.

AND IT IS SO ORDERED.