## 1173

James L. PALM, Jr., Deceased, James Lewis Palm, Sandy Ann Palm, a minor, Shirley Ann Palm Merritt, Rusty Lewis Palm, Minor, Julia Lucille Williams, Veronica Jean Palm Stewart, and Christy Lynn Palm, Minor, Plaintiffs v. GENERAL PAINTING COMPANY, INC., Employer, and United States Fidelity and Guaranty Company, Carrier, Defendants, of whom Sandy Ann Palm and Rusty Lewis Palm are Appellants-Respondents, and of whom Christy Lynn Palm and Julia Lucille Williams are Respondents-Appellants.

(370 S. E. (2d) 463)

Court of Appeals

*James D. Calmes, III*, Greenville, *for appellants-respondents.*

*Ronald S. Clement* and *Donald L. Pilzer*, Greenville, *for respondents-appellants.*

Heard April 19, 1988.

Decided June 6, 1988.

Reh. Den. June 24, 1988.

GOOLSBY, Judge:

This workers' compensation case arises out of the death on June 10, 1985 of James Lewis Palm, Jr. The single commissioner awarded benefits to Sandy Ann Palm, Rusty Lewis Palm, and Christy Lynn Palm under Section 42-9-290 of the South Carolina Code of Laws (1976) as employee dependents and denied benefits to Julia Lucille Williams thereunder. The full commission and the circuit court affirmed the single commissioner's order. Sandy, Rusty, Christy, and Julia all appeal. The basic issue on appeal is whether Christy, found by the single commissioner to be the legitimate daughter of the deceased, Rusty, found by the single commissioner to be the illegitimate son of the deceased, and Julia, found by the single commissioner to be married to another but totally dependent on the deceased for support for a period in excess of three months prior to the death of the deceased, are entitled to benefits. We affirm.

I.

We address first the issue of whether the single commissioner erred in awarding Christy benefits.

The single commissioner found Christy "was the legitimate issue of the marriage of Veronica Jean Palm Stewart and [the deceased], having been born during the existence of their marriage and before such marriage was legally dissolved." He also found the deceased "had access to his wife ... during the period that ... Christy ... was conceived."

Sandy, Rusty, and Julia question the single commissioner's failure to find Christy collaterally estopped to claim the deceased is her father and question whether Christy may be considered a dependent of the deceased. Sandy and

Rusty also question the factual underpinnings of the single commissioner's finding regarding Christy's being the child of the deceased and the reliance by the single commissioner on *Barr's Next of Kin v. Cherokee, Inc.*, 220 S. C. 447, 68 S. E. (2d) 440 (1951), to support his finding.

## A.

Sandy, Rusty, and Julia base their contention that Christy is collaterally estopped to claim the deceased is her father on two family court orders, one entered in 1982 divorcing the deceased from Christy's mother and finding Christy to be illegitimate and the other entered in 1985 declaring Christy to be the daughter of Veronica and Bobby Roy Stewart, changing Christy's last name from Palm to Stewart, and directing Christy's birth certificate to reflect Stewart as Christy's natural father.

Although Christy was neither a party to the divorce action nor represented by a guardian *ad litem* therein, a guardian *ad litem* represented her in the name-change action. Sandy, Rusty, and Julia, however, were strangers to both family court actions.

A party is not precluded from relitigating an issue with another person if the party lacked a full and fair opportunity to litigate the issue in the first action or if other circumstances justify affording the party an opportunity to litigate the issue again. *Beall v. Doe*, 281 S. C. 363, 315 S. E. (2d) 186 (Ct. App. 1984). In determining the question of whether a party may relitigate an issue, a court may consider whether the prior determination apparently was based on a compromise verdict or finding and whether other compelling circumstances make it appropriate that the party be allowed to relitigate the issue. *Id.*; RESTATEMENT (SECOND) OF JUDGMENTS § 29(5) and (8) at 291-292 (1982). The question of whether to allow a stranger to use offensive collateral estoppel so as to bar a party from relitigating an issue in a subsequent action is one addressed to the broad discretion of the trial court. *Conley v. Spillers*, 301 S. E. (2d) 216 (W. Va. 1983).

We have no trouble concluding the single commissioner did not abuse his discretion in refusing to hold Christy precluded by the divorce action and by the

name-change action from relitigating the issue of her legitimacy in the instant action.

Christy was neither a party nor a privy of a party to the divorce action. She therefore lacked a full and fair opportunity to litigate the issue of her legitimacy in that action. *Cf. Prather v. Tupper*, 267 S. C. 636, 230 S. E. (2d) 712 (1976) (a determination that a child was illegitimate must be set aside where the child was not represented by a guardian *ad litem* in the action and an issue was not raised by the pleadings and a defendant is not bound by an adjudication where he was not a party to the action).

The name-change action was uncontested. Had the guardian *ad litem* contested the allegations made by Christy's mother and Stewart in their petition and not joined in their prayer that Christy be found to be their daughter, that her name be changed, and that her birth certificate be amended, the action could reasonably have been resolved otherwise. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 29, comment g at 295 (1982) (A party is not precluded from relitigating an issue with another where "[t]he circumstances attending the determination of an issue in the first action may indicate that it could reasonably have been resolved otherwise if those circumstances were absent."). Indeed, in view of the presumption of legitimacy and the restrictions placed on a spouse's testimony regarding non-access to the other spouse during the period of conception, the result probably would have been the same as the result here. *Peoples National Bank of Greenville v. Manos Brothers, Inc.*, 226 S. C. 257, 84 S. E. (2d) 857, 45 A. L. R. (2d) 1070 (1954); *Lewter by Epps v. Thompson*, 281 S. C. 397, 315 S. E. (2d) 821 (Ct. App. 1984).

### B.

We find no merit in the contention that Christy is not entitled to share in the deceased's death benefits because, under the name-change order, she was not a dependent of the deceased at the time of his death.

As a surviving child of the deceased, Christy, who was four years old when the deceased died, is conclusively presumed under Section 42-9-110 of the South Carolina Code of Laws (1976) "to be wholly dependent for support" on the

deceased. *See* CODE OF LAWS OF SOUTH CAROLINA § 42-1-70 (1976) (defining the term "child" to include only persons under 18 years of age or wholly dependent upon the employee).

C.

As to the challenge by Sandy and Rusty to the single-commissioner's finding that Christy is the legitimate child of the deceased, in a workers' compensation case a finding of the Workers' Compensation Commission cannot be reversed or modified by a court unless the finding is controlled by legal error or is "[c]learly erroneous in view of the reliable, probative and substantial evidence on the whole record." CODE OF LAWS OF SOUTH CAROLINA § 1-23-380(g)(3) and (5) (1976); *Lail v. Georgia-Pacific Corp.*, 285 S. C. 234, 328 S. E. (2d) 911 (1985); *Hanks v. Blair Mills, Inc.*, 286 S. C. 378, 335 S. E. (2d) 91 (Ct. App. 1985).

A child born in lawful wedlock is presumed to be legitimate. *Chandler v. Merrell*, 291 S. C. 227, 353 S. E. (2d) 135 (1987); *Barr's Next of Kin v. Cherokee, Inc., supra.* "The presumption of legitimacy arising from birth in wedlock supports the rule that, ordinarily, if a husband had access to his wife so that by the laws of nature he could be the father of a child born in wedlock, it must be presumed to be his." 10 Am. Jur. (2d) *Bastards* § 12 at 853 (1963). This presumption, however, is rebuttable but only " 'by the clearest evidence that it was impossible for [the husband], by reason of impotency or imbecility, or entire absence from the place where the wife was during [the period of conception], to have had access to the wife, or to be the father of the child.' " *Barr's Next of Kin v. Cherokee, Inc.*, 220 S. C. at 464, 68 S. E. (2d) at 447.

Here, the reliable, probative, and substantial evidence on the whole record shows that Christy was conceived and born during a time when her mother Veronica Jean Palm Stewart was married to the deceased, whom she later divorced, and that the deceased had access to Christy's mother during the period Christy was conceived.

Christy's mother and the deceased married sometime in 1975 and divorced on September 14, 1982. Christy was born on October 30, 1980, after being conceived, according to her

mother, sometime during February, 1980. Christy's mother testified she had sexual intercourse with the deceased "[q]uite a few times" in February, 1980.

The presumption of legitimacy, therefore, clearly applies.

Although the single commissioner made no express finding that the presumption of legitimacy was not rebutted by the clearest of evidence that it was impossible for the deceased to have fathered Christy, he implicitly did so. Evidence supporting this implicit finding was supplied by Stewart himself. Stewart denied he had sexual relations with Christy's mother in February, 1980.

### D.

We also find no merit in Sandy's and Rusty's contention that the single commissioner improperly relied on *Barr's Next of Kin* in declaring Christy to be the legitimate daughter of the deceased because the issue regarding Christy's legitimacy had become moot when Christy's mother and Stewart married subsequent to Christy's birth. *See* CODE OF LAWS OF SOUTH CAROLINA § 20-1-60 (1976) ("If the parents of an illegitimate child subsequently marry, the child shall become legitimate . . . .").

This argument, however, assumes Christy was illegitimate to start with. Section 20-1-60 has no application where a child's birth is legitimate, as Christy's birth is presumed to have been.

The determination of the issue of whether Christy was the legitimate daughter of the deceased at the time of her birth, obviously, depended in large measure on the rule stated in *Barr's Next of Kin.*

### II.

We next address the issue of whether the single commissioner erred in awarding Rusty benefits.

The single commissioner found the deceased to have fathered Rusty. He also found "that during the period of time that Rusty L. Palm was conceived, Julia Lucille Williams' husband, Harvey King, did not have access to Julia . . . because he was incarcerated. . . ."

Christy questions the single commissioner's findings that Rusty is a child and a dependent of the deceased.

## A.

Julia conceived and gave birth to Rusty while married to Harvey Sylvester King; therefore, under *Barr's Next of Kin*, Rusty is presumed to be the legitimate child of Julia and her husband.

The single commissioner, however, found Rusty to be the illegitimate child of Julia and the deceased. In so holding, the single commissioner found the evidence rebutted the presumption of legitimacy when he determined there was non-access by Julia to her husband during the period she conceived Rusty.

Competent evidence supports the single commissioner's conclusion regarding non-access. This evidence, which is reliable, probative, and substantial and is recounted below, may properly be viewed as clear and convincing. *See* 10 C. J. S. *Bastards* § 6 at 38-39 (1938) (the evidence to overcome the presumption of legitimacy must be clear and convincing).

According to Henry Clayton Ivester, Jr., and his wife Kimberly Louise Ivester, Julia lived with the deceased in a room adjoining theirs in a Florida motel from sometime in June to the end of July or the first part of August, 1984.

Julia testified Rusty, who was born on April 18, 1985, was conceived either at the end of July or at the beginning of August, 1984. Julia testified she engaged in sexual inter-course with the deceased during the period when Rusty was conceived.

The Ivesters testified they never saw Harvey while the four of them lived in Florida.

According to an affidavit of service appearing on an ar-rest warrant, Harvey was arrested on July 18, 1984, and, according to a letter from William J. Floyd, Appalachian Regional Classification Coordinator of the South Carolina Department of Corrections, was returned to the custody of the Department on July 20, 1984. The letter also shows King remained in the Department's custody until November 1, 1985, confined all the while in the Perry Correctional In-stitution in Pelzer, South Carolina.

According to both Henry and Julia, the deceased contributed to Rusty's support.

## B.

We find no merit in the contention that Rusty is not entitled to share in the deceased's death benefits because he was not a dependent of the deceased "for a period of three months or more prior to the accident." CODE OF LAWS OF SOUTH CAROLINA § 42-9-120 (1976). The deceased was killed about two months after Rusty's birth.

As a surviving child of the deceased, Rusty, even though illegitimate, is entitled to compensation based on the death of the decedent. *Flemon v. Dickert-Keowee, Inc.*, 259 S. C. 99, 190 S. E. (2d) 751 (1972). Like Christy, Rusty is conclusively presumed under Section 42-9-110 of the Code "to be wholly dependent for support" on the deceased. The three-month requirement of Section 42-9-120 does not apply to a surviving illegitimate child.

## III.

We come now to the issue of whether the single commissioner erred in denying Julia benefits.

Julia, who lived with the deceased for approximately two years, was married to Harvey on the date the deceased died. Although the single commissioner found Julia totally dependent upon the deceased for support, he nevertheless barred her claim for death benefits. The single commissioner relied on *Day v. Day*, 216 S. C. 334, 58 S. E. (2d) 83 (1950).

The Supreme Court stated in *Day*,

> [I]t was not the intention of the legislature to permit a woman to be classed and considered as a dependent within the meaning of our [Workers'] Compensation Act who lives in an illicit relationship with a man to whom she is not legally married.

216 S. C. at 345, 58 S. E. (2d) at 88. The claimant in *Day* had married the deceased in the good faith but mistaken belief that her fist husband was dead.

Julia who does not claim that she thought herself no longer married to Harvey while she lived with the deceased,

argues *Day* only bars a bigamous spouse. We disagree, though well aware of cases elsewhere that would support Julia's right to recover. *Department of Industrial Relations v. Workers' Compensation Appeal Board*, 94 Cal. App. (3d) 72, 156 Cal. Rptr. 183 (1979); *West v. Barton-Malow Co.*, 394 Mich. 334, 230 N. W. (2d) 545 (1975), *rehearing denied*, 395 Mich. 902, 232 N. W. (2d) 672 (1975); *Kendall v. Housing Authority of Baltimore City*, 196 Md. 370, 76 A. (2d) 767 (1950); *Russell v. Johnson*, 220 Ind. 649, 46 N. E. (2d) 219 (1943); *see* 2 A. LARSON § 63.43 at 11-176 (1987) (discussion concerning the situation where a claimant knows a relationship is illicit and is dependent on the deceased). If a bigamous spouse, who mistakenly believed in good faith in the validity of her marriage, is barred from receiving death benefits under the Workers' Compensation Act, surely a person who, while married to another, cohabits with one not his or her spouse with no belief that they are married is likewise not to be considered a dependent within the meaning of the act.

If death benefits are to be awarded to one who deliberately lived in an adulterous relation with a deceased employee, the General Assembly and not the courts should prescribe the conditions for an award in such cases. *See Day v. Day*, 216 S. C. at 345, 58 S. E. (2d) at 88 ("In our opinion, if it had been the intention of the legislature to sanction an adulterous relationship as constituting a basis of dependency, express provision would have been made therefor in the [Workers'] Compensation Act.").

We need not address Julia's argument regarding the constitutionality of Section 42-9-120 of the Code as interpreted by the Supreme Court's decision in *Day*. So far as the record shows, this contention is made for the first time on appeal. *Powers v. City of Aiken*, 255 S. C. 115, 177 S. E. (2d) 370 (1970).

Affirmed.

GARDNER and CURETON, JJ., concur.

## ORDER ON PETITIONS FOR REHEARING

*Per Curiam:*

This matter is before the court upon a petition for rehearing filed by Sandy Ann Palm and Rusty Lewis Palm and a petition for rehearing filed by Julia Lucille Williams. Neither petition has merit.

With particular regard, however, to the ground urged by Julia involving the constitutionality of Section 42-9-120 of the South Carolina Code of Laws (1976), as interpreted by the Supreme Court's decision in *Day v. Day*, 216 S. C. 334, 58 S. E. (2d) 83 (1950), Julia is correct when she states that it is inferable from the record that she raised this issue before the single commissioner. Even so, we need not address Julia's argument concerning the question of the statute's validity.

The circiut court nowhere passes upon the issue and it nowhere appears that Julia made any motion pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure to amend the judgment by requesting the circuit court to address it; therefore, the issue is not properly preserved. *See Talley v. South Carolina Higher Education Tuition Grants Committee*, 289 S. C. 483, 347 S. E. (2d) 99 (1986) (where an issue was raised in the lower court but not ruled on by the trial judge the issue is not preserved and the party is obligated to move before the lower court to amend the judgment pursuant to Rule 59(e)); *Green v. Green*, 237 S. C. 424, 117 S. E. (2d) 583 (1960) (an issue raised by an exception is not properly before the Supreme Court where the record does not disclose the trial judge passed on the issue).

Petitions denied.