# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Tyrone York, as personal representative for Timothy York (Deceased), Shirley York, and Yvonne Burns, Plaintiffs,

Of Whom Yvonne Burns is the Respondent,

And

Shirley York is the Petitioner,

v.

Longlands Plantation a.k.a Knollwood, Inc., and Companion Property and Casualty Group, Respondents.

Appellate Case No. 2018-001877

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From The Workers' Compensation Commission

---

Opinion No. 27950
Heard November 20, 2019 – Filed March 4, 2020

---

## REVERSED

---

Blake A. Hewitt, of Bluestein Thompson Sullivan, LLC, and Ann McCrowey Mickle, of Mickle & Bass, LLC, both of Columbia, for Petitioner.

William E. Jenkinson, III and John Thomas Thompson, both of Jenkinson Jarrett & Kellahan, of Kingstree; Helen F. Hiser, of Mount Pleasant, and Jonathan B. Hylton, of Florence, both of McAngus Goudelock & Courie, LLC, for Respondents.

---

**JUSTICE HEARN:** In this contest for death benefits under the Workers' Compensation Act, we must determine whether a girlfriend can qualify as a dependent. The commission found that because the girlfriend was engaged in an illicit relationship in violation of our fornication statute,[1] she could not recover the death benefits as a matter of public policy. The court of appeals reversed, finding, notwithstanding the fact the girlfriend's initial claim was based on being the deceased's common-law wife, there was no evidence of fornication in the record. Because the relevant facts are not in dispute, we reverse and award benefits to the deceased's mother.

## FACTS

In August 2013, Timothy York drowned when his boat capsized on a pond at Longlands Plantation in Greeleyville, South Carolina. The deceased's brother and personal representative of the estate filed a claim for death benefits under the Act. Although there were initially several individuals who were potential dependents, before the single commissioner, only York's mother, Shirley ("Mother"), and his girlfriend, Yvonne Burns, claimed death benefits.

The deceased's somewhat sporadic relationship with Yvonne began approximately five to seven years before his death. While the deceased lived with Yvonne at times, he often spent two or three days per week at either Mother's or a friend's house, primarily because Yvonne periodically kicked him out of her house. One witness testified that Yvonne kicked him out about eight or ten times in the eight months preceding his death. Another witness testified Yvonne made the deceased leave nearly every weekend. A third witness noted the deceased lived with Mother "very frequently" over the two years before he died. Yvonne admitted she asked the deceased to leave her house at least three or four times in 2013 due to his excessive drinking.

---

[1] S.C. Code Ann. § 16-15-60 (2015).

While the deceased lived at different addresses depending on his status with Yvonne, there were facts supporting that the two were involved in a long term relationship. Yvonne had control of his debit card, which she would use to withdraw money to pay some of his bills. She also used his money to pay for repairs to her house. Additionally, the deceased transferred the title of his vehicle to Yvonne after his license was suspended due to multiple DUIs.

Yvonne noted she began seeing the deceased in the late 1990s, but the parties separated before reuniting sometime in 2004-2005. She worked approximately fifty hours per week as a nurse's aide, and filed as head of the household on her tax returns, indicating no one else could claim her as a dependent. Her house was in her name, and she only used "York" on a furniture contract, purportedly because she planned to marry him. Although several witnesses testified she planned to marry while others were unaware of this fact, no one testified that they were in fact married.

Before the commissioner, Yvonne claimed she was the deceased's common-law wife or alternatively, that she was a dependent under the Act. The commissioner found that Yvonne was not common-law married to the deceased and that finding was not appealed.[2] She noted both parties filed their tax returns as single, and Yvonne checked the box that indicated no one could claim her as a dependent. Concerning dependency, the commissioner found both Mother and Yvonne "did have some level of dependency, albeit Ms. Burns' [dependency] was greater." For Mother, the commissioner noted her degree of dependency included "receiving money from the deceased to pay bills, groceries, laundry, and the pharmacy." This finding was based on Mother's testimony that the deceased gave her approximately $50-$60 per month. Both the deceased and his brother financially supported Mother because her monthly social security disability payment was insufficient. Regarding Yvonne, the commissioner found she used the deceased's debit card to pay her bills, including for her vehicle and insurance, groceries, clothes, and work uniforms. The commissioner noted, "[B]oth Ms. Burns and the deceased's mother, Shirley York, were partially dependent on Deceased and, therefore, would be entitled to benefits pursuant to Section 42-9-130. However, this is immaterial to my ruling."

The commissioner denied recovery for Yvonne based in part on South Carolina's fornication statute, concluding the General Assembly did not intend for

---

[2] We recently abolished common-law marriage prospectively in *Stone v. Thompson*, 428 S.C. 79, 82, 833 S.E.2d 266, 267 (2019). However, this decision does not apply here because of its prospective nature, and regardless, Yvonne abandoned this issue before us.

the statutory term "dependent" to include someone in an "illicit" relationship. *See* S.C. Code Ann. § 16-15-60 (criminalizing adultery and fornication). In reaching this conclusion, the commissioner also relied on *Day v. Day*, 216 S.C. 334, 341, 58 S.E.2d 83, 86 (1950) (holding a bigamous spouse could not receive benefits because her marriage was void), and a North Carolina case with similar facts, *Fields v. Hollowell & Hollowell*, 78 S.E.2d 740, 744 (N.C. 1953) (noting that cohabitants are not dependents because the court will not reward parties for a relationship that is in open defiance of statutory law).

Yvonne appealed to the commission, which affirmed in full, reciting the commissioner's order verbatim. She then appealed to the court of appeals, which ostensibly reversed the commission's factual finding of fornication because there was no evidence to support that finding. Accordingly, the court of appeals remanded to the commission for a determination of whether Yvonne was a dependent under the Act. Mother sought certiorari, arguing Yvonne cannot be considered a dependent. Yvonne also agreed a remand was unnecessary, albeit on different grounds; instead, she contended the reversal of the commission's finding of fornication means its partial dependency determination as to both Mother and Yvonne remains. This Court granted certiorari.

## ISSUE

Does Yvonne qualify as a dependent under the Workers' Compensation Act?

## DISCUSSION

Yvonne contends the court of appeals erred in remanding this dispute to the commission to determine whether she qualified as a dependent. Mother also agrees that a remand is unnecessary, but contends a girlfriend is not a legal dependent as contemplated by the Act. We agree with Mother.

We begin by noting the Act sets forth two classes of dependents who may recover death benefits: those who are conclusively presumed as dependents and all others who demonstrate the requisite factual showing. *Adams v. Texfi Indus.*, 320 S.C. 213, 216, 464 S.E.2d 109, 111 (1995). Surviving spouses and children are conclusively presumed to be dependents under section 42-9-110 while section 42-9-120 states, "In all other cases questions of dependency, in whole or in part, shall be determined in accordance with the facts as the facts may be at the time of the accident . . . ." S.C. Code Ann. § 42-9-120. Because this dispute concerns the decedent's mother and girlfriend, our focus is on the latter provision. The question then turns on the meaning of "dependent," which is not defined in the Act. Instead, our case

law has set forth a general framework for determining dependency: "Stated generally, a dependent is one who looks to another for support and maintenance; one who is in fact dependent—one who relies on another for the reasonable necessities of life." *Day,* 216 S.C. at 342, 58 S.E.2d at 86–87. This Court has since reaffirmed this test in deciding the requisite showing of dependency for a stepchild to receive death benefits. *Adams*, 320 S.C. at 216, 464 S.E.2d at 111.

In *Day*, the decedent's "spouse" was denied benefits because she was legally married to another man when she married the decedent. 216 S.C. at 344–45, 58 S.E.2d at 88. The spouse thought her prior husband had died, when he had not, and there was no dispute that she married the decedent in good faith. Although the facts appealed "strongly to [the Court's] sympathy," it did not believe the General Assembly intended to permit recovery for a person living in a bigamous relationship.

Nearly forty years later, the court of appeals addressed a similar situation. *Palm v. Gen. Painting Co.*, 296 S.C. 41, 43, 370 S.E.2d 463, 464 (Ct. App. 1988), *aff'd as modified on other grounds*, 302 S.C. 372, 396 S.E.2d 361 (1990). In *Palm*, a woman lived with the decedent for two years before his death while married to another man. 296 S.C. at 49, 370 S.E. 2d at 468. The commission found the woman was wholly dependent on the decedent but concluded she did not qualify as a dependent under the Act based on *Day*. The court noted,

> If a bigamous spouse, who mistakenly believed in good faith in the validity of her marriage, is barred from receiving death benefits under the Workers' Compensation Act, surely a person who, while married to another, cohabits with one not his or her spouse with no belief that they are married is likewise not to be considered a dependent within the meaning of the act.

*Id.* at 50, 370 S.E.2d at 468.

While jurisdictions are split regarding whether unmarried cohabitants may recover death benefits,[3] we find the General Assembly's silence over the past seven

---

[3] Some states have interpreted nearly identical statutes to permit recovery for unmarried cohabitants. *See, e.g.*, *Dep't of Indus. Relations v. Workers' Comp. Appeals Bd.*, 156 Cal. Rptr. 183 (Ct. App. 1979), *disapproved of on other grounds by Atl. Richfield Co. v. Workers' Comp. Appeals Bd.*, 644 P.2d 1257 (1982); *West v. Barton-Malow Co.*, 230 N.W.2d 545, 547 (1975); *Kendall v. Hous. Auth. of Baltimore City*, 76 A.2d 767, 769 (Md. 1950) ("Thus, for example, a person

decades is significant. *See Wigfall v. Tideland Utilities, Inc.*, 354 S.C. 100, 111, 580 S.E.2d 100, 105 (2003) ("When the Legislature fails over a forty-year period to alter a statute, its inaction is evidence the Legislature agrees with this Court's interpretation."). Further, our neighboring states of Georgia and North Carolina are in line with our decision. *Williams v. Corbett*, 398 S.E.2d 1, 2 (1990); *Fields*, 78 S.E.2d at 744.[4] While some states bar recovery absent a legal relationship between the claimant and the decedent, *see Banegas v. State Indus. Ins. System*, 19 P.3d 245, 252 (Nev. 2001) (holding an unmarried cohabitant financially dependent on worker was not entitled to death benefits), others, such as Virginia, also look towards some affirmative obligation justifying recovery. As the Virginia Court of Appeals noted in quoting the Third Circuit Court of Appeals,

> That concept [of dependency] has been defined with variations *ad nauseam,* by the legislatures and courts, especially in connection with workmen's compensation and wrongful death statutes. But all those definitions, statutory and judicial, comprehend an irreducible common denominator—actual support plus some form of preexisting and at least ethical obligation . . . . "Trivial or casual, or, perhaps, wholly charitable assistance would not create the relationship of dependency . . . . Something more is undoubtedly required . . . . [I]t must, it would seem, rest upon some moral or legal or equitable grounds, and not upon the purely voluntary or charitable impulses or disposition of the member."

*Dunnavant v. Newman Tire Co.*, 656 S.E.2d 431, 434 (Va. Ct. App. 2008) (quoting *Morrell v. Comm'r,* 107 F.2d 34, 35 (3d Cir. 1939)). Accordingly, consistent with our case law and statutory text, we believe the above analysis is sound and best aligns with our General Assembly's intent in enacting section 42-9-120. As a result, in order to qualify as a dependent under that section, the claimant must show a legal relationship or alternatively, an affirmative undertaking with the decedent.

While the commission found both Yvonne and Mother were partially dependent according to the facts, it did not analyze whether the deceased owed a legal or some other obligation to Yvonne. Regardless, notwithstanding the Act's beneficent purpose, there must be something more than intermittent financial

---

supported merely through charitable motives, without legal or moral obligation, would be eligible under the statute as amended.").

[4] We note while the holdings of these cases remain sound, we do not embrace some of the outdated language.

assistance; instead, the claimant must rely on the decedent "for the reasonable necessities of life." *Day*, 216 S.C. at 342, 58 S.E.2d at 87.

Moreover, even if Yvonne were able to demonstrate a legal or other sufficient obligation, she has failed as a matter of law to prove factual dependency. In discussing the degree of dependency required for a stepchild to recover death benefits, we have looked to facts such as whether the deceased employee provided "medical insurance coverage, braces, household utilities, groceries, car expenses, clothing, summer camp, and made payments on the indebtedness on the family home." *Adams v. Texfi Indus.*, 341 S.C. 401, 404, 535 S.E.2d 124, 125 (2000). Additionally, the decedent in *Adams* filed a joint tax return with his wife, claiming the stepchild as a dependent—unlike Yvonne and the deceased, who both filed separately and did not claim any dependents. While the status listed on a tax return is not determinative, it carries weight, as it did in *Adams*. *Id.* at 404, 535 S.E.2d at 125 ("Evidence in the record also indicates that on their joint tax return, the deceased employee and his wife claimed petitioner as a dependent."). In contrast to the stepparent-stepchild situation, the deceased and Yvonne had an on-again off-again relationship during which time she owned her own home and filed as head of household. Accordingly, Yvonne cannot show that she relied on the decedent for the "reasonable necessities of life," nor can she demonstrate a legal or other sufficient obligation justifying recovery.[5]

## CONCLUSION

Based on the foregoing, we reverse the court of appeals and award the decedent's mother, Shirley York, the death benefits as his sole dependent under the Act.

---

[5] While we are cognizant of *Lawrence v. Texas*, 539 U.S. 558 (2003) and case law from other states casting doubt on the constitutionality of section 16-15-60, we need not address this issue in light of our decision. *See Fairway Ford, Inc. v. Cty. of Greenville*, 324 S.C. 84, 86, 476 S.E.2d 490, 491 (1996) (noting it is an appellate court's "firm policy" of not reaching the constitutionality of a statute unless necessary to resolving the case at issue). *See, e.g., In re J.M.*, 575 S.E.2d 441 (Ga. 2003) (Georgia fornication statute unconstitutional); *State v. Saunders*, 381 A.2d 333 (N.J. 1977) (New Jersey fornication statute unconstitutional); *State v. Pilcher*, 242 N.W.2d 348 (Iowa 1976) (stating the constitution voids state statutes prohibiting consensual sexual acts between unmarried adults).

**KITTREDGE, Acting Chief Justice, FEW, JAMES, JJ., and Acting Justice Thomas E. Huff, concur.**