In the Matter of the Estate of PORTIA R. TABLER, Deceased. DOMINICK J. VISCARDI, as Executor of PORTIA R. TABLER, Deceased, et al., Respondents; DARLENE T. EICHEN et al., Appellants.

Third Department, March 6, 1980

APPEARANCES OF COUNSEL

*Donohue, Bohl, Clayton & Komar, P. C. (Gerald J. Lawson,* attorney; *Myron Komar* of counsel), for appellants.

*Urfirer & Brooks, P. C. (James M. Brooks* of counsel), for Dominick J. Viscardi, respondent.

*Lewis, Bell & Niles (John L. Bell* of counsel), for American Cancer Society and another, respondents.

*Robert Abrams, Attorney-General (Allan E. Kirstein, Shirley Adelson Siegel* and *Irwin M. Strum* of counsel), for ultimate charitable beneficiaries, respondent.

## OPINION ON THE COURT

CASEY, J.

In accordance with an order of this court, a hearing was held before the Surrogate of Essex County to determine whether the appellants were distributees of Portia R. Tabler, deceased, thereby entitling them to file objections to the probate of her last will and testament *(Matter of Tabler,* 55 AD2d 207). The appellants contended that they are the grand-

children of the decedent by virtue of a common-law marriage between decedent's only child, Darby Rowe Tabler,[1] and their mother Eleanor Crammond. Alternatively, they contended that if such a marriage did not exist, they were the illegitimate children of Darby Rowe Tabler and as such they were distributees of the decedent. In this regard the appellants argue that EPTL 4-1.2 (subd [a], par [2]), which requires that, before an illegitimate child may inherit from a father, a filiation order be made within the lifetime of the father in a proceeding commenced during the pregnancy of the mother or within two years of the child's birth[2] violates their constitutional rights to equal protection of the law and due process.

■ Initially, the Surrogate found that no common-law marriage existed between Darby Rowe Tabler and Eleanor Crammond. At the hearing, the appellants, primarily through the testimony of Eleanor Crammond, sought to establish that Darby Rowe Tabler and Eleanor Crammond had entered into a common-law marriage in the District of Columbia. Although common-law marriages were abolished in New York in 1933 (People v Allen, 27 NY2d 108), a common-law marriage validly contracted in another jurisdiction will be recognized in New York (Matter of Pecorino, 64 AD2d 711, mot for lv to app den 46 NY2d 708). According to the law of the District of Columbia, an element of a valid common-law marriage is a present agreement made by parties competent to marry to live together as husband and wife with the resulting obligatons arising from the marriage relation (Matthews v Britton, 303 F2d 408; United States Fid. & Guar. Co. v Britton, 269 F2d 249).

Eleanor Crammond testified that she and Darby Rowe Tabler packed up and left their home in Cantonsville, Md., where Eleanor Crammond had a job, and moved 20 or 30 miles to Washington, D. C., so that Darby Tabler could find work. At the time neither of them had any job prospects or a plan to stay in the District of Columbia, and they did not

1. Darby Rowe Tabler died on August 10, 1960.

2. EPTL 4-1.2 was amended, effective May 29, 1979, and provides, among other things, that where the statutory qualifications are met, the illegitimate child may inherit from and through his father. In addition, the section provides that if, within 10 years after the birth of the child, a formal acknowledgment of paternity is completed by the father and filed with the State Department of Social Services, an illegitimate child may inherit from and through his father (L 1979, ch 139). These amendments, however, are not applicable to the matter before this court since they were not in effect at the death of the decedent (EPTL 1-1.5).

notify anyone of their move. No other witnesses testified as to their change of location.

Eleanor Crammond also testified concerning their initial encounter with their landlady in Washington, who repeatedly asked them if they were married and their repeated mutual assurances that they were married. She also testified that shortly thereafter she and Darby Tabler exchanged verbal marriage vows. They remained in the District of Columbia for only three weeks.

■ The Surrogate rejected all of the testimony of Eleanor Crammond concerning her alleged common-law marriage with Darby Rowe Tabler. In so doing, he based his decision upon the demeanor of the witness on both direct and cross-examination. This court, not having observed the witness, will not lightly set aside that finding of the trial court (Boyd v Boyd, 252 NY 422). The decision of the Surrogate that there was no common-law marriage validly contracted between Darby Rowe Tabler and Eleanor Crammond in the District of Columbia is neither against the weight of the credible evidence, nor contrary to the law and should not be disturbed (Shipman v Words of Power Missionary Enterprises, 54 AD2d 1052).

Assuming that the appellants are the illegitimate children of Darby Rowe Tabler,[3] we must proceed to the constitutional issues raised with respect to EPTL 4-1.2 (subd [a], par [2]). The then applicable provisions of that section specified that: "An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child."

■ Insofar as that section requires illegitimate children who would inherit from their father by intestate provisions to provide a particular form of proof of paternity, the Court of Appeals held that it did not violate the constitutional rights of illegitimate children to equal protection of the law (Matter of Lalli, 43 NY2d 65, affd 439 US 259). There was no order of filiation obtained during the lifetime of Darby Rowe Tabler. Accordingly, the appellants are totally unable to comply with EPTL 4-1.2 (subd [a], par [2]). This being so, they cannot be

---

3. The Surrogate found that they were not the children of Darby Rowe Tabler. In view of our determination that those children cannot surmount the requirements of EPTL 4-1.2 (subd [a], par [2]), we need not review that determination.

distributees, and thus are not entitled to file objections to the last will and testament of Portia R. Tabler, deceased.

Furthermore, under the then applicable provisions of EPTL 4-1.2 (subd [a], par [2]) the rights of an illegitimate child did not extend to the father's kindred (see *Matter of Fay,* 44 NY2d 137). The argument that the preclusion of inheritance by an illegitimate from his paternal kindred irrespective of the existence of an order of filiation is unconstitutional is without merit. The preclusion of inheritance by an illegitimate from his paternal kindred, at least where there is no order of filiation, is not violative of equal protection (see *Matter of Fay, supra,* p 144).

The appellants' contention that their constitutional rights of due process have been violated is also untenable. Simply stated, they claim that they were never able to comply with the relevant provisions of EPTL 4-1.2 and its predecessor, section 83-a of the Decedent Estate Law, because when those sections took effect Darby Rowe Tabler had died and more than two years had passed since the birth of each appellant. The appellants fail to consider, however, that nothing during the lifetime of Darby Rowe Tabler or within the period set forth in EPTL 4-1.2 (subd [a], par [2]) prevented the institution of a proceeding resulting in an order of filiation. This being so, their constitutional argument must fail.

The order should be affirmed, with costs.

KANE, J. P., STALEY, JR., MAIN and MIKOLL, JJ., concur.

Order affirmed, with costs.