571 So.2d 541 (1990)
Robert JOHNSON and Areta Johnson, Appellants,
v.
LINCOLN SQUARE PROPERTIES, INC., a Florida Corporation and United States of America, Appellees.
No. 89-03158.
District Court of Appeal of Florida, Second District.
December 14, 1990.
Mark H. Perenich of Perenich, Carroll, Perenich & Avril, P.A., Clearwater, for appellants.
Bradley J. Goewert and David H. McClain of McClain & Associates, P.A., Tampa, for appellee Lincoln Square Properties, Inc.
RYDER, Acting Chief Judge.
Appellants, Robert and Areta Johnson, seek reversal of the trial court's final order dismissing Mrs. Johnson's consortium claim in this negligence action. On August 8, 1987, Mr. Johnson sustained an injury while in the course and scope of his employment with appellee, Lincoln Square Properties, Inc. (Lincoln Square). The complaint alleged that Lincoln Square failed to provide workers' compensation coverage in violation of chapter 440, Florida Statutes (1987). Mr. Johnson sued for common law compensation as a result of Lincoln Square's negligent failure to provide a safe work place. Mrs. Johnson sought recovery for the loss of her husband's services, companionship and consortium.
*542 At the time of the accident, the Johnsons were residents of Florida, and allegedly living together as husband and wife under the common law of Texas. In 1971, while residents in Texas, the Johnsons agreed to be married, live together and represent to others that they were married. Seven days after the accident, they were married in accordance with Florida law.
Lincoln Square moved to dismiss the consortium claim on the ground that the claim was founded on an out-of-state common law marriage, and Florida does not recognize common law marriages pursuant to section 741.211, Florida Statutes (1987). The trial court agreed and dismissed the consortium claim with prejudice.
"Few subjects in the law seem so inscrutable as conflicts-of-law theory. After more than a century of evolution, conflicts law remains characterized by uncertain purposes and manipulable methodology."[1] In the instant case we have an alleged conflict between section 741.211, Florida Statutes (1987),[2] which makes common law marriages in Florida void as of 1968, and section 1.91(a)(2), Texas Family Code Annotated (Vernon 1975),[3] which recognizes the creation of common law marriages in Texas.
Lincoln Square would have us hold that because section 741.211, Florida Statutes, has made common law marriages in the state of Florida void, public policy demands that the validity of the marriage be determined under Florida law. Florida law does not have to give full faith and credit to another state's law when it is repugnant to the interest of Florida.
We, however, do not agree with this reasoning. Florida has traditionally approved of the sanctity of marriage, and the act of marriage, regardless of where it is contracted. The law presumes that a valid marriage exists and the person that challenges the validity of a marriage carries a heavy burden.
The `presumption' of the existence of a valid marriage, recognized as one of the strongest of all legal presumptions, arises out of the concern of all civilized societies over the legitimacy of children, the descent and distribution of property and the sanctity of marriage as the keystone of Christian governments.
In re Estate of Marden, 355 So.2d 121, 126 (Fla. 3rd DCA 1978). The recognition of this strong presumption of validity is the antithesis of finding that the act of marriage is repugnant to the interest of Florida. Therefore, public policy arguments are without merit.[4]
This case is one of first impression in Florida, since the enactment of section 741.211. However, Florida has always determined the validity of a marriage in accordance with laws of the place where the marriage occurred. See Goldman v. Dithrich, 131 Fla. 408, 179 So. 715 (Fla. 1938). In Young v. Viruet de Garcia, 172 So.2d 243 (Fla. 3d DCA 1965), the court looked to the laws of Puerto Rico to determine the validity of the common law marriage that was asserted. However, because the marriage was invalid under Puerto Rican law, *543 Florida refused to recognize it. The court held that the validity of marriage is determined by the law of the state where the contract of marriage occurred. Id. at 244. See also Guelman v. De Guelman, 453 So.2d 1159, 1160 (Fla. 3rd DCA 1984) (trial court did not err in finding Bolivia marriage valid, pursuant to Bolivian law).
Although there are no Florida decisions which have held that section 741.211 invalidates out-of-state common law marriages, the Attorney General opined that section 741.211 did not change the established principle that the validity of a marriage is determined by the law of the place where the marriage occurred. 1968 Op.Att'y Gen.Fla. 068-63 (April 22, 1968) (the statute did not preclude the recognition of a Georgia common law marriage). While we recognize that the Attorney General's opinions are not binding, they are persuasive.
Additionally, other jurisdictions have dealt with this issue. New York no longer recognizes common law marriages, nevertheless, it recognizes the validity of common law marriages contracted in other jurisdictions. See Matter of Will Tabler, 73 A.D.2d 101, 426 N.Y.S.2d 132 (N.Y. App. Div. 1980) (court looked to the law of the state wherein the marriage was contracted). North Carolina, another jurisdiction that does not recognize the creation of common law marriage, will look to the laws of the state where the marriage was allegedly contracted to determine its validity. See Bowlin v. Bowlin, 55 N.C. App. 100, 285 S.E.2d 273 (1981) (court upheld the validity of a common law marriage from South Carolina).
Accordingly, we hold that section 741.211 is limited to marriages occurring in Florida and was never intended to affect persons lawfully married outside of Florida. If it were so, then the statute would have the effect of converting lawful marriages into adulterous relationships and bastardizing children from those relationships. We, therefore, reverse the trial court's order dismissing Mrs. Johnson's consortium claim and remand to the trial court with directions to reinstate Mrs. Johnson's consortium claim.
We do not address the issue of whether or not the Johnsons' common law marriage is valid pursuant to Texas law. Additionally, we certify the following question to the Florida Supreme Court as one of great public importance:
Whether section 741.211, Florida Statutes (1987), which makes common law marriages in Florida void as of 1968, also operates to make valid out-of-state common law marriages void?
Reversed and remanded with instructions.
THREADGILL and ALTENBERND, JJ., concur.
NOTES
[1] Finch & Smeltzly, The Restatement Second and Conflict of Laws: Extending The Bishop Approach to Problems in Contracts, 16 Stet.L. Rev. 261, 261 (1987).
[2] Section 741.211, Florida Statutes (1987), provides:

No common law marriages entered into after January 1, 1968, shall be valid, except that nothing contained in this section shall affect any marriage which, though otherwise defective, was entered into by the party asserting such marriage in good faith and in substantial compliance with this chapter.
[3] Section 1.91(a)(2), Texas Family Code Annotated (Vernon 1975), provides:

(a) In any judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:
....
(2) they agreed to be married, and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.
[4] Compare to cases which deal with gambling, where Florida refused to give full faith and credit to gambling debts, because gambling in Florida is illegal and therefore repugnant to the interest of the state. See, e.g., M & R Investments Co., Inc. v. Hacker, 511 So.2d 1099 (Fla. 5th DCA 1987) (Florida courts not bound to entertain an original action for the enforcement of a gambling debt).