*980 ALTENBERND, Judge,
Dissenting.
Under article V, section 3(b)(5) of the Florida Constitution, the supreme court’s jurisdiction to accept cases passed through from the district courts without a disposition is restricted to a very limited group of cases. The judges of this court must certify that such a case requires “immediate” resolution and that the “order” on appeal presents issues of “great public importance” or is an order that will have “a great effect on the proper administration of justice throughout the state.” This court has been very selective in the process of sending cases to the supreme court before they are briefed and before this court has issued its own opinion. See State v. Adkins, 71 So.3d 184, 185 & n. 1 (case accepted by supreme court on pass through and circuit court reversed by State v. Adkins, 96 So.3d 412 (Fla.2012)). Although this case is of importance to these parties, I cannot agree that this case is a proper subject for pass through.
This couple lawfully married in Massachusetts in 2010. After moving to Florida, the marriage became irretrievably broken. They filed a petition for dissolution of marriage and submitted to the circuit court an agreed final judgment incorporating a marital settlement agreement. The record is unclear as to how the jurisdiction of the circuit court became an issue in this case. However, in March 2014, the attorney for the petitioner provided notice to the Attorney General that the case involved a constitutional challenge to section 741.212(1), Florida Statutes (2013), and article I, section 27 of the Florida Constitution. Each party filed a memorandum arguing that the court had jurisdiction and that the provisions were unconstitutional for various reasons. The record contains transcripts of those hearings. The Attorney General did not file an appearance, and no one argued in support of the legal provisions. The circuit court then entered the order on appeal, which determined that the circuit court had no jurisdiction to grant a divorce because of section 741.212(1)[3] and article I, section 27 of the Florida Constitution.[4] The order contains no discussion of any constitutional argument and no express constitutional ruling. Most important, it has no discussion of the constitutionality of these provisions under the Full Faith and Credit Clause of the U.S. Constitution. See art. IV, § 1, U.S. Const.[5]
Both parties have appealed this order that refuses to give credit to this lawful out-of-state same-sex marriage for purposes of its dissolution. Apparently, no party • intends to argue that the circuit court correctly dismissed this dissolution proceeding. The Attorney General has made no appearance in this case, and we do not know whether the Attorney General *981 will argue that Florida law constitutionally prohibits these Florida residents from obtaining a divorce.[6]
It is important to understand that the issue in this ease is not whether Florida is constitutionally compelled to marry same-sex couples. Even if the United States Supreme Court ultimately holds that Florida can reserve the rights and privileges of civil marriage in Florida to heterosexual couples, many other states have already legalized such same-sex marriages. Although the parties argued broader issues to the circuit court, the narrow, dispositive issue in this case is whether Florida, under the Full Faith and Credit Clause of the U.S. Constitution, must give credit to these lawful out-of-state marriages for the purpose of dissolution. Presumably, this issue is comparable to the question of whether, after January 1, 1968, Florida was required to give such credit to lawful, out-of-state common law marriages. See § 741.211, Fla. Stat. (2013); Johnson v. Lincoln Square Props., Inc., 571 So.2d 541, 543 (Fla. 2d DCA 1990) (requiring a trial court to give full faith and credit to an out-of-state common law marriage in a claim for consortium); Compagnoni v. Compagnoni, 591 So.2d 1080, 1081-82 (Fla. 3d DCA 1991) (requiring a trial court to recognize out-of-state common law marriage when distributing assets in a divorce proceeding); Anderson v. Anderson, 577 So.2d 658, 660 (Fla. 1st DCA 1991) (requiring a trial court to give credit to a Georgia common-law marriage in a dissolution proceeding).
Given that same-sex marriages are a recent development in other states, I am not convinced that Florida’s courts will be clogged in the next three years with out-of-state same-sex couples seeking dissolution. I cannot certify that this order will have “a great effect on the proper administration of justice throughout the state” requiring immediate review in the supreme court.
Although the issue on appeal is important to this couple, I am not convinced that the order on appeal presents an issue that is ripe to be treated as one of great public importance. Given that the circuit court dismissed the case without elaboration and that no one has yet appeared as a party to fulfill the function of an appellee, this issue does not seem to me to be one that this court cannot handle on appeal or that we should present to the supreme court as a matter ready for immediate resolution. This court and all of the other district courts consider countless questions of great public importance. A select few of those questions we certify to the supreme court after we have issued a reasoned decision. We pass through these questions only when they have a level of statewide urgency. Unfortunately, divorces and divorce appeals take too long in many cases. Yet, we delay sending cases to the supreme court even when the rights of children are at stake. I see no reason to believe that the circumstances of this single case require special, expedited treatment.[7]
*982 We have an order from one circuit court judge containing no reasoning as to the issue on appeal. That order is not binding law on her colleagues in the Thirteenth Judicial Circuit, much less on the judges in other circuits. I am confident that this court can ably consider this appeal and reach a proper resolution. Our decision will resolve the issue for all trial courts in Florida unless another district court disagrees with us. See Pardo v. State, 596 So.2d 665, 666 (Fla.1992). This issue, unlike the constitutionality of the ban on same sex marriage, may never require the attention of the supreme court.[8] If we believe the case has some immediacy, we should not grant extensions in this case but should expedite the process. Indeed, we could convert the case to a petition for writ of mandamus, which would allow rapid determination' of whether the circuit court was legally required to give credit to the out-of-state marriage in this dissolution proceeding.

.Section 741.212(1) provides:
Marriages between persons of the same sex entered into in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, or relationships between persons of the same sex which are treated as marriages in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, are not recognized for any purpose in this state.

. Article I, section 27 of the Florida Constitution, which is within the declaration of rights, states: "Inasmuch as marriage is the legal union of only one man and one woman as husband and wife, no other legal union that is treated as marriage or the substantial equivalent thereof shall be valid or recognized.”

. Article IV, Section 1 of the U.S. Constitution provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State....”

. Permitting such divorces would be a relatively minor adjustment to Florida law that would be largely compatible with the policy behind the rest of these Florida provisions. Thus, the Attorney General may not necessarily choose to appeal this issue to the supreme court even if we ultimately rule in favor of the parties.

. Apparently recognizing the risk that the circuit court would not enter the judgment of dissolution, the parties themselves in their marital settlement agreement announced their intent that the agreement “shall be binding and the final agreement of the Parties, regardless of whether the State of Florida grants this dissolution of marriage, relief must be sought in another jurisdiction, or *982 dissolution of this marriage cannot be obtained.”

. If this court were to hold the statute or the state constitutional provision unconstitutional as applied to dissolution proceedings involving such out-of-state marriages, the Florida Supreme Court would have mandatory appeal jurisdiction over that ruling. See art. V, § 3(b)(1), Fla. Const. On questions controlled by the U.S. Constitution, the United States Supreme Court has occasionally taken a case from this court when it was not reviewed by the Florida Supreme Court. See Palmore v. Sidoti, 466 U.S. 429, 431, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984).