**ETHYLE BLOCH**

v.

**HAROLD N. BLOCH, Appellant**

D.C. Civil No. 31-1971

United States Court of Appeals

Third Circuit

Submitted Under Third Circuit Rule 12(6)

October 30, 1972

Filed February 16, 1973

JOHN F. JAMES, ESQ., St. Croix, V.I., *attorney for appellant*

THOMAS ALKON, ESQ. (ISHERWOOD and COLIANNI), St. Croix, V.I., *attorneys for appellee*

Before KALODNER, ADAMS and ROSENN, *Circuit Judges*

KALODNER, *Circuit Judge*

Does Virgin Islands' public policy preclude recognition of a common law marriage entered into by Virgin Islands domiciliaries in a state where such a marriage is valid?

That is the primary question, of first impression, presented by this appeal.

The District Court of the Virgin Islands answered it in the negative in awarding a decree of divorce to the appellee Ethyle Bloch from the appellant Harold N. Bloch on the ground of incompatibility of temperament.

A second question presented is whether the District Court was "clearly erroneous" in its fact-finding that the Blochs had entered into a common law marriage during a visit they had made to Florida in October 1965.[1] It may be noted, parenthetically, that the appellant does not challenge the District Court's determination as to incompatibility.

These background facts are undisputed:

The Blochs are residents and domiciliaries of Christiansted, St. Croix, Virgin Islands. In 1962 they commenced living together under one roof, sharing bed and board. A son was born to them in February 1963. From the beginning of their 1962 relationship until the institution of the divorce proceedings in 1971, they held themselves out in the community as husband and wife. In October 1965 they paid a visit to Mrs. Bloch's father in Miami Beach, Florida. They spent the first night of that visit in her father's home, and the next two or three days in a Miami Beach hotel where they registered as husband and wife. Prior to the Florida visit, the appellant purchased and gave the ap-

---

[1] Common law marriages were valid in Florida at the time. They no longer are since Florida enacted a law in 1967 which provided that common law marriages entered into after January 1, 1968 would not be valid. (Ch. 67-571; F.S. 1967, § 741.211 F.S.A.)

pellee a wedding ring which she thereafter wore on the appropriate finger.

The divorce proceedings developed only one critical fact issue, viz., whether the Blochs, during their Florida visit, had entered into a common law marriage, in consonance with then prevailing Florida law,[2] by the exchange of vows. The appellee testified they had exchanged vows and the appellant denied it. The District Court resolved the conflict in the testimony in favor of the appellee. In doing so it stated that it found the appellee's "demeanor as a witness was the more forthright by far," and that "she impressed on the witness stand as being earnest and truthful."

Rule 52(a), F.R.Civ.P., commands that where a trial is had to the court its "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

■ It is settled that Rule 52(a) governs appellate review of a fact-finding of a trial court, and that under it, such a finding, when supported by evidence, can be found to be "clearly erroneous" *only* when the appellate court, upon review of all the evidence, " 'is left with the definite and firm conviction that a mistake has been committed.' " McAllister v. United States, 348 U.S. 19, 20 (1954), quoting from United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

Speaking for this Court, Judge Aldisert recently spelled out the sweep of appellate review of fact-findings made by a trial court, as follows:

"It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determi-

---

[2] In 1965, a common law marriage could be established in Florida by evidence of an agreement between the parties per verba de praesenti to be husband and wife. Phillips v. Phillips, 215 So.2d 83, 84 (Fla. App. 1968).

nation either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. Unless the reviewing court establishes the existence of either of these factors, it may not alter the facts found by the trial court. To hold otherwise would be to permit a substitution by the reviewing court of its finding for that of the trial court, and there is no existing authority for this in the federal judicial system, either by American common law tradition or by rule and statute." Krasnov v. Dinan, 465 F.2d 1298, 1302–1303 (1972).[3]

Applying the principles stated, we are of the opinion, upon review of all the evidence, that the District Court's fact-finding that the appellant and appellee entered into a common law marriage in Florida in 1965 was not "clearly erroneous."

It may be noted parenthetically that the District Court found that "apart from the express finding that the parties vowed and consented to be husband and wife in Florida, their cohabitation and holding out as husband and wife in that State would be sufficient to supply the condition of mutual consent" under Florida law,[4] irrespective of the brief span of the Florida visit.[5]

We come now to the primary question, of first impression, whether the public policy of the Virgin Islands precludes recognition of a common law marriage entered into by Virgin Islands domiciliaries in a state where such a marriage is valid.

As earlier stated, the District court answered the question in the negative.

In doing so, it held that while common law marriages may not be validly entered into in the Virgin Islands under

---

[3] See, too: Gainey v. Brotherhood of Railway and Steamship Clerks, etc., 406 F.2d 744, 745–746 (3 Cir. 1968), cert. denied, 394 U.S. 998 (1969); Speyer, Inc. v. Humble Oil and Refining Company, 403 F.2d 766, 769–770 (3 Cir. 1968), cert. denied, 394 U.S. 1015 (1969); Robert H. Fox Co. v. Keystone Driller Company, 232 F.2d 831, 834 (3 Cir. 1956).

[4] In re Estate of Alcala, 188 So.2d 903 (Fla. App. 1966).

[5] Metropolitan Life Insurance Company v. Holding, 293 F.Supp. 854, 857 (E.D. Va. 1968).

Title 16 V.I.C. § 32, effective September 1, 1957,[6] they are not included in the category of "Void marriages," Title 16 V.I.C. § 1,[7] or "Voidable marriages," Title 16 V.I.C. § 2,[8] and accordingly they are cognizable under Title 1 V.I.C. § 4,[9] which makes effective in the Virgin Islands the Restatement, Conflicts of Laws § 123 provision that a common law marriage "is valid everywhere" if entered into "in a state in which such a marriage is valid."[10]

In so holding, the District Court said:

"I find nothing in the statutory or decisional law in the Virgin Islands to indicate that a common law marriage, even if prohibited, is against the public policy of this forum. Certainly, common law marriages are not numbered among those declared to be void (see 16 V.I.C. section 1) or even voidable (see 16 V.I.C. section 2). Accordingly, section 123 of the restatement is to be given effect. . . ."

---

[6] Title 16 V.I.C. § 32 (Supp. 1972) provides:
"Persons solemnizing marriage
"No marriage shall be valid unless solemnized by—
(1) a clergyman or minister of any religion whether he resides in the Virgin Islands or elsewhere in the United States; or
(2) witnessed by a Local Spirtual Assembly of the Bahai is according to the usage of their religious community; or
(3) any judge or any court of record."

[7] Title 16 V.I.C. § 1, "Void marriages," prohibits and declares void from the beginning marriages between certain related persons, and bigamous marriages.

[8] Title 16 V.I.C. § 2, "Voidable marriages," provides:
"A marriage is illegal and shall be void from the time its nullity is declared by decree, if either party thereto—
"(1) is an idiot or a person adjudged a lunatic;
"(2) has consented thereto by reason of fraud or force;
"(3) is incapable, from physical causes, of entering into the marriage itself; or
"(4) is under the age of consent, which is hereby declared to be 16 years of age for males and 14 years for females."

[9] Title 1 V.I.C. § 4 provides:
"The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." The cited sections became effective September 1, 1957.

[10] Restatement, Conflict of Laws § 123 (1934) provides:
"A marriage without any formal ceremony is valid everywhere if the acts alleged to have created it took place in a state in which such a marriage is valid."
Accord, Restatement, Second, Conflict of Laws § 283, comments (f), (g) (approved May 23, 1969).

■ We are in accord with the District Court's holding that the public policy of the Virgin Islands does not preclude recognition of a common law marriage entered into by its domiciliaries in a state where such a marriage is valid.

The sum of the appellant's challenge to the District Court's holding is that the Virgin Islands statutory requirement that marriages shall be solemnized "clearly shows a strong public policy" with respect to common law marriages entered into in other jurisdictions.

The stated contention disregards the fact that Title 16 V.I.C. § 4[11] which concerns marriages entered into by Virgin Islands domiciliaries "in another jurisdiction" declares such marriages "illegal" *only* if they are "declared illegal by sections 1 and 2 of this title." Sections 1 and 2, respectively, define categories of "Void" and "Voidable" marriages. They do not, as earlier noted, include common law marriages.

Failure of § 4 of Title 16 to include common law marriages between Virgin Islands domiciliaries, "in another jurisdiction," in the category of "illegal marriages, is of significant dimension in ascertaining the Islands' public policy with respect to such marriages.

The general rule is that in the absence of an express provision to the contrary, a common law marriage, valid in the state in which it is entered into, will be held valid by the courts of the domicile even though such a marriage could not be entered into in the domicile by force of its statutory law. Cf. Loughran v. Loughran, 292 U.S. 216, 223 n. 3 (1934) ; see Albina Engine and Machine Works v.

[11] Title 16 V.I.C. § 4, "Entering into prohibited marriages outside the Virgin Islands," provides:

"If any marriage declared illegal by sections 1 and 2 of this title is entered into in another jurisdiction by persons having and retaining their domicile in the Virgin Islands, such marriage shall be deemed illegal, and may be decreed void in the same manner as if it had been celebrated within the Virgin Islands."

O'Leary, 328 F.2d 877 (9 Cir.), cert. denied, 379 U.S. 817 (1964).

The circumstance that under Title 16 V.I.C. § 32 a common law marriage cannot be entered into in the Virgin Islands "does not make it so offensive to local policy" so as to preclude recognition of a common law marriage entered into in a state where such a marriage is valid. See Restatement, Conflict of Laws § 134, comment (b) (1934).[12]

For the reasons stated the Decree of the District Court will be affirmed.

---

[12] Restatement, Conflict of Laws § 134, comment (b) states:
"The mere fact that the foreign marriage would have been contrary to the statute of the forum had it occurred within the state, does not make it so offensive to local policy as to be refused enforcement."