TERRY JEAN KING BOWLIN v. ELEANOR L. BOWLIN, ADMINISTRATRIX OF THE ESTATE OF JOSEPH JAMES BOWLIN, AND JEFFREY JAMES BOWLIN, MINOR

No. 8128DC341

(Filed 15 December 1981)

1. **Declaratory Judgment Act § 3— status of plaintiff as widow—justiciable controversy**

   A justiciable controversy determinable under the Declaratory Judgment Act was presented as to whether plaintiff is the widow of deceased and entitled to share in his estate with defendant, the son of deceased.

2. **Marriage § 2— common law marriage in South Carolina—sufficiency of evidence**

   Plaintiff and deceased entered into a valid common law marriage in South Carolina, and plaintiff was the widow of deceased at the time of his death in 1980 and was entitled to share in his estate, where the evidence showed that deceased told plaintiff that he had been to his lawyer's office and received some papers and had torn them up; deceased and plaintiff were married in South Carolina the next day, 28 May 1976; on the day they were married, deceased stated in plaintiff's presence that he was divorced; deceased's divorce from his first wife was not effective until five days after his marriage to plaintiff; plaintiff did not learn that deceased wasn't divorced at the time of their marriage until she applied for social security benefits after his death; plaintiff and deceased resided in South Carolina as husband and wife from December 1977 until June 1978; and after the marriage in 1976, the couple represented to the various communities in which they lived that they were husband and wife, since plaintiff and deceased became husband and wife by (1) attempting in good faith to contract a lawful marriage in South Carolina, and (2) continuing the relationship and holding themselves out as husband and wife in South Carolina between December 1977 and June 1978 after the obstacle to their marriage had been removed.

   Judge HEDRICK dissenting.

APPEAL by defendants from *Roda, Judge.* Judgment entered 2 February 1981. Heard in the Court of Appeals 12 November 1981.

Defendants appeal from a summary judgment granted in favor of plaintiff, declaring her the lawful wife of the deceased Joseph James Bowlin.

The record discloses the following facts:

On 28 May 1976, plaintiff and Joseph James Bowlin were married in Greenville, South Carolina. Joseph James Bowlin died

in Alaska, where he was working, on 18 February 1980. After his death, plaintiff applied for social security benefits and then learned for the first time that when she married Joseph James Bowlin he had not been granted a divorce from his first wife, Elaine Mildred Bowlin. The date of the divorce, 3 June 1976, was five days after his marriage to the plaintiff. A child, Jeffrey James Bowlin, was born of the first marriage.

Plaintiff testified in her deposition that after the marriage ceremony in 1976, the couple immediately returned to Buncombe County, North Carolina, where they lived until January 1977 when Bowlin went to work in Alaska. Plaintiff joined him there in February of 1977 and remained with him until the following November. When he returned from Alaska in December of 1977, the couple moved to Myrtle Beach, South Carolina, where they resided until June of 1978. Bowlin then left for Alaska and the plaintiff returned to Asheville, North Carolina. After the marriage in 1976, the couple represented to the various communities in which they lived that they were husband and wife.

Plaintiff was aware prior to their marriage that Bowlin was married to someone else. She stated, however, that he had told her he had gone to his lawyer's office one day, had been given "some kind of papers" and that "when he walked out, he just tore them up and the next day, we went and got married."

Eleanor Bowlin testified that her son, Joseph James, told her in the presence of plaintiff that he had been divorced before he married plaintiff. She stated that her son and the plaintiff had a reputation in the community as being husband and wife and that they had filed joint tax returns in North Carolina.

*Gudger, Reynolds & Patton, by William Patton, for plaintiff appellee.*

*Riddle, Shackelford & Hyler, by John E. Shackelford, for defendant appellants.*

MARTIN. (Harry C.), Judge.

[1]   At the outset, we note that this action was brought under the Declaratory Judgment Act, article 26 of chapter 1 of the General Statutes of North Carolina. Although the allegations might be more artfully stated, we find them sufficient to state a

claim under the statute. Plaintiff alleges facts that could support a finding that she is the widow of Joseph James Bowlin and thus entitled to share in his estate along with his son, Jeffrey James Bowlin. Jeffrey James Bowlin, through his guardian ad litem, denies those allegations, seeking to exclude plaintiff from participating in his father's estate. These allegations present a justiciable controversy between the parties over the status of plaintiff as the widow of Bowlin and their respective rights in the estate of Bowlin. *Lide v. Mears*, 231 N.C. 111, 56 S.E. 2d 404 (1949). Plaintiff and defendant Jeffrey James Bowlin have adverse interests in the matter in dispute, *i.e.*, the marital status of Bowlin at the time of his death. They are not merely fishing in the judicial pond. *Id.*

[2]   Turning now to the merits of the appeal, although we are cognizant of the fact that this Court has recently decided a case on strikingly similar facts in *Parker v. Parker*, 46 N.C. App. 254, 265 S.E. 2d 237 (1980), we nevertheless find it necessary to review the law respecting common law marriages in South Carolina in order to determine its effect on the facts of this case.

In *Davis v. Whitlock*, 90 S.C. 233, 73 S.E. 171 (1911), the wife entered into a second marriage believing that, after seven years of absence, her first husband was dead. He was, in fact, still living. Mr. Davis did not know of the former marriage. However, plaintiff and defendant continued to cohabit after the first husband's death, at which point their marriage became a valid common law marriage. The court provided the following insight into its holding:

> [W]here the relation began as meretricious, it cannot be converted into a marriage by the mere removal of the obstacle to marriage without some subsequent agreement to be husband and wife. But the authorities are unanimous in holding that if a man and woman enter into a contract of marriage believing in good faith that they are capable of entering into the relation notwithstanding a former marriage, when, in fact, the marriage is still of force, and after the removal of the obstacle of the former marriage the parties continue the relation and hold themselves out as man and wife, such action constitutes them man and wife from the date of the removal of the obstacle.

*Id.* at 246, 73 S.E. at 175.

Distinguishing *Davis* from later cases, including *Bannister v. Bannister*, 150 S.C. 411, 148 S.E. 228 (1929), upon which defendants rely, is the fact that the marriage in *Davis* was contracted for in good faith. Neither civil nor criminal law forbade remarriage where the defendant wife's first husband had been absent for seven years. In *Bannister* the husband, Ivory, entered into a second marriage without obtaining a divorce from his first wife, Carrie, whom he knew to be alive and with whom he continued to have contact after the second marriage. Carrie later died. The court held that "[t]he second marriage being thus meretricious in its inception, the status thereby created continued, even though the obstacle was removed by Carrie's death, unless changed by some subsequent agreement on the part of Ivory and Mary to be husband and wife." *Id.* at 414, 148 S.E. at 229.

The South Carolina Supreme Court had an opportunity the following year, in *Lemon v. Lemon*, 158 S.C. 71, 155 S.E. 285 (1930), to further refine the "good faith" / "subsequent agreement" dichotomy advanced in *Bannister*. The court wrote:

> Under our view of the evidence in the case, we cannot escape the conclusion that, at the time of the alleged marriage of the woman, Sally, to Henry Lemon, Sally had a living husband, Elias Washington, to whom she was lawfully married several years prior to the time of the alleged marriage with Henry Lemon. Therefore, the marriage of Sally to Henry Lemon was unlawful. Later Elias Washington died, and it appears from the record that Sally and Henry Lemon continued to live together as man and wife for some time after the death of Elias Washington, but, so far as the record discloses, there was no subsequent marriage contract and no subsequent agreement between Sally and Henry to be husband and wife. Furthermore, there is nothing in the record tending to show that at the time of the alleged marriage of Sally and Henry these parties acted in good faith, believing that they were capable of entering into the marriage relation. On the other hand, it appears that they knew Sally had a living husband. There is no evidence that Elias Washington was at that time dead, or that either Sally or Henry had reason to believe he was dead.

*Id.* at 76-77, 155 S.E. at 287.

The law continued to evolve with the case of *Byers v. Mount Vernon Mills, Inc.*, 268 S.C. 68, 231 S.E. 2d 699 (1977), which implied that once the barrier to the marriage is removed, it is only possible to enter into a common law marriage arrangement by new mutual agreement.[1] Although the parties in *Byers* had continued to live together as man and wife after the husband's first wife had obtained a divorce, the court found no evidence of a new mutual agreement "either by way of civil ceremony or by way of a recognition of the illicit relation and a new agreement to enter into a common law marriage arrangement." *Id.* at 71, 231 S.E. 2d at 700.

The holding in *Byers* found support in the case of *Kirby v. Kirby*, 270 S.C. 137, 241 S.E. 2d 415 (1978), which was relied on by this Court in *Parker, supra.* In *Kirby*, the husband was aware that his wife was married to another man when they began residing together as husband and wife. Four years later she obtained a divorce. She testified that after her divorce "she and respondent agreed to obtain a ceremonial marriage but 'never got around to it.' " 270 S.C. at 141, 241 S.E. 2d at 417. The court found that this testimony was sufficient to establish the recognition of the "illicit relationship and an expression of intent to enter into a new martial arrangement." 270 S.C. at 142, 241 S.E. 2d at 417. The court also considered the fact that

> [t]he parties consistently represented themselves as husband and wife in their community. Respondent engaged in several real estate transactions between 1956 and 1976 and requested appellant to renounce her dower rights on each occasion. Respondent and appellant appear as husband and wife on their children's birth certificates. The parties filed joint federal income tax returns.

270 S.C. at 141, 241 S.E. 2d at 417.

---

1. In 1960, the Supreme Court of South Carolina, in a case with facts which do not control our present case, held that "[i]t is essential to a common law marriage that there shall be a mutual agreement between the parties to assume toward each other the relation of husband and wife. Cohabitation without such an agreement does not constitute marriage." *Johnson v. Johnson*, 235 S.C. 542, 550, 112 S.E. 2d 647, 651 (1960).

Armed with this background, it becomes clear that we must go back in time, revive the case of *Davis v. Whitlock, supra,* and rekindle the "good faith" / "subsequent agreement" dichotomy in order to resolve the issues presented in the case sub judice. As in *Byers, supra,* there is no evidence in this case that the plaintiff and Joseph James Bowlin ever entered into a civil ceremony or recognized their illicit relationship and mutually agreed to a common law marriage relationship after Bowlin's divorce was granted. In fact, as the plaintiff did not learn that there was a five-day overlap between her marriage and the divorce until after Bowlin's death, the evidence refutes any possibility of a subsequent mutual agreement. This is so even in light of *Kirby, supra,* and *Parker, supra,* which suggest that the agreement need not take the form of "a public unequivocal declaration of the parties," 270 S.C. at 140, 241 S.E. 2d at 416, but that the agreement "may be adduced from circumstances, such as the parties' representation to the community that they are husband and wife." 46 N.C. App. at 258, 265 S.E. 2d at 240. The fact remains that plaintiff never recognized their illicit relationship or consciously agreed to a common law marriage arrangement.

The evidence shows that Terry Jean and Joseph James Bowlin entered into the 28 May 1976 marriage in good faith. Terry Jean did not learn that Bowlin wasn't divorced at the time of their marriage until she applied for social security benefits. Bowlin had told her that he had been to his lawyer's office and received some papers and that he had torn them up. The next day they went to South Carolina and were married. On the day they were married, Bowlin said, in her presence, that he was divorced. Joseph James Bowlin's good faith belief that he was legally divorced on the date of his marriage is supported by his mother's testimony that Bowlin said that he was divorced. More importantly, there is no evidence to the contrary. We cannot imply wrong or fraud to Joseph James Bowlin and therefore hold that he and Terry Jean entered into the marriage ceremony on 28 May 1976 in good faith within the requirements of *Davis, supra.*

We further hold that Terry Jean and Joseph James Bowlin were husband and wife on 18 February 1980, by concluding that their cohabitation and holding out as husband and wife in South Carolina, between December of 1977 and June of 1978, was a sufficient continuation of their relationship after the removal of the

impediment to meet the *Davis* test. *Bloch v. Bloch,* 473 F. 2d 1067 (3d Cir. 1973); *Parker, supra.* We are persuaded by the fact that the parties attempted in good faith to contract a lawful marriage in South Carolina and subsequent to their marriage returned to that state and lived together publicly as husband and wife.

For the foregoing reasons we affirm the trial court's granting of plaintiff's motion for summary judgment. *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971).

Affirmed.

Judge CLARK concurs.

Judge HEDRICK dissents.

HEDRICK, Judge, dissenting.

On the authority of *Kirkman v. Kirkman,* 42 N.C. App. 173, 256 S.E. 2d 264, *disc. rev. denied,* 298 N.C. 297, 259 S.E. 2d 300 (1979), and cases cited therein, I vote to vacate the judgment of the district court and remand the matter to that court for the entry of an order dismissing the proceeding. To what end has the court been called upon to declare whether the plaintiff, Terry Jean King Bowlin, is the "lawful, legal wife of Joseph James Bowlin, deceased"? The majority, in my opinion, reads too much into the pleadings when they say the plaintiff and the defendant, Jeffrey James Bowlin, have adverse interests in the *estate* of Joseph James Bowlin. The pleadings contain no allegations of a justiciable issue among the parties. Although it is alleged that the defendant, Eleanor L. Bowlin, has been appointed administratrix of the estate of Joseph James Bowlin, deceased, there is no allegation that the deceased owned any property, real or personal, or that the administratrix has done anything, or contemplates doing anything, toward the administration of the estate. Indeed, the administratrix, although made a party defendant, has not even filed an answer. The question of whether plaintiff was the lawful wife of Joseph James Bowlin at the time of his death, and thus his widow at the time this proceeding was commenced, insofar as the pleadings in this matter are concerned, is purely academic. I realize the act providing for declaratory judgments is to be construed liberally, but, in my opinion, this

does not mean that the courts should be called upon to adjudicate problems which do not exist and may never arise. I vote to vacate and remand.