747 S.E.2d 791

Lavona HILL, Appellee,

v.

BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; Retirement Board of the Bert Bell NFL Player Retirement Plan, Defendant,

v.

Barbara H. Sullivan, Appellant.

Appellate Case No. 2012–212193.

No. 27308.

Supreme Court of South Carolina.

Submitted March 20, 2013.
Decided Aug. 28, 2013.

David B. Sherman and Lawrence Solomon, both of Solomon, Sherman & Gabay, of Philadelphia, Pennsylvania, for Appellee.

Robert T. Vance, Jr., of Philadelphia, Pennsylvania, for Appellant.

Chief Justice TOAL.

We certified the following question from the United States Court of Appeals for the Third Circuit:

Does South Carolina recognize the "putative spouse" or "putative marriage" doctrine (hereinafter, putative spouse doctrine)?

We answer the certified question, "no."

## I.

This action involves competing claims to the retirement benefits of the late Thomas Sullivan (Thomas), former National Football League (NFL) running back for the Philadelphia Eagles.

On March 15, 1979, Thomas married Lavona Hill (Hill) in Maryland. Thomas and Hill separated in 1983, but never divorced. On March 15, 1986, Thomas purported to marry Barbara Sullivan (Barbara) in South Carolina. The record indicates Thomas and Barbara obtained a marriage license, and that Barbara was unaware of Thomas' prior marriage to Hill. In 1991, Thomas submitted pension forms to the NFL indicating Barbara was his current spouse.

Thomas died on October 10, 2002. Thereafter, Barbara filed a claim with the Bert Bell/Pete Rozelle NFL Player Retirement Plan (the Plan), which provides benefits to a player's "surviving [s]pouse" and defines that term as "a [p]layer's lawful spouse, as recognized under applicable state law." In November 2002, the Plan began paying Barbara benefits in the amount of $2,700 per month.

Four years later, Hill contacted the Plan to request benefits. Following an investigation, the Plan suspended payments to Barbara pending a court order identifying Thomas's surviv-

ing spouse. After Hill failed to obtain that order, the Plan resumed payments to Barbara.

In August 2009, Hill filed this action against the Plan in Pennsylvania state court, claiming entitlement to Thomas's retirement benefits. The Plan promptly removed the case to federal district court and filed an interpleader counterclaim, joining Barbara as a party to the action.

After a bench trial, the federal district court found Barbara and Thomas's purported marriage void under South Carolina's bigamy statute because Thomas and Hill never divorced. *Hill v. Bert Bell/Pete Rozelle NFL Player Ret. Plan,* No. 09–4051, 2010 WL 4452523 (E.D.Pa. Nov. 4, 2010). The district court further found South Carolina had not adopted the putative spouse doctrine, and thus, Hill was entitled to receive Thomas's retirement benefits as his surviving spouse.

On appeal to the United States Court of Appeals for the Third Circuit, Barbara argues she should receive the same rights conferred upon a legal spouse under the putative spouse doctrine because she lived with Thomas with the good faith belief they were married. Barbara maintains she was unaware of Thomas's prior marriage to Hill, and that Thomas's benefits should therefore be apportioned between her and Hill in the interests of justice. Conversely, Hill contends she is entitled to all of Thomas's retirement benefits because she and Thomas never divorced, and South Carolina does not recognize the putative spouse doctrine.

## II.

The putative spouse doctrine is codified in section 209 of the Uniform Marriage and Divorce Act as follows:

Any person who has cohabited with another to whom he is not legally married in the good faith belief that he was married to that person is a putative spouse until knowledge of the fact that he is not legally married terminates his status and prevents acquisition of further rights. A putative spouse acquires the rights conferred upon a legal spouse, including the right to maintenance following termination of his status, whether or not the marriage is prohibited or declared invalid. If there is a legal spouse or other putative spouses, rights acquired by a putative spouse do

not supersede the rights of the legal spouse or those acquired by other putative spouses, but the court shall apportion property, maintenance, and support rights among the claimants as appropriate in the circumstances and in the interests of justice.

(internal citations omitted); *see also* Christopher L. Blakesley, *The Putative Marriage Doctrine*, 60 TUL. L.REV. 1, 6 (1985) (discussing the putative spouse doctrine). South Carolina has not adopted the putative spouse doctrine. *See Lovett v. Lovett*, 329 S.C. 426, 432, 494 S.E.2d 823, 826 (Ct.App.1997) (mentioning the putative spouse doctrine in dicta, but declining to address the applicability of the doctrine in South Carolina because the issue was not preserved for appellate review).

We decline to adopt the putative spouse doctrine, as it is contrary to South Carolina's statutory law and marital jurisprudence. *See* S.C.Code Ann. § 20–1–80 (Supp.2012) ("All marriages contracted while either of the parties has a former wife or husband living shall be void."); *Lukich v. Lukich*, 368 S.C. 47, 56, 627 S.E.2d 754, 758 (Ct.App.2006) ("Even if Wife was acting under a good faith belief, South Carolina will not recognize her bigamous second marriage because to do so would violate public policy."); *Day v. Day*, 216 S.C. 334, 338, 58 S.E.2d 83, 85 (1950) ("A mere marriage ceremony between a man and a woman, where one of them has a living wife or husband, is not a marriage at all. Such a marriage is absolutely void, and not merely voidable."); *Howell v. Littlefield*, 211 S.C. 462, 466, 46 S.E.2d 47, 48 (1947) ("[Husband's] existing marriage in North Carolina incapacitated him ... to contract another marriage....").

### III.

For the foregoing reasons, we decline to adopt the putative spouse doctrine in South Carolina.

**CERTIFIED QUESTION ANSWERED.**

PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.