NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4577
_____

LAVONA HILL

v.

BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN;
RETIREMENT BOARD OF THE BERT BELL NFL PLAYER RETIREMENT PLAN

v.

BARBARA H. SULLIVAN,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cv-04051)
District Judge:  Honorable Berle M. Schiller
_____

Submitted Under Third Circuit LAR 34.1(a)
May 24, 2012

Before:  RENDELL, FUENTES and HARDIMAN, *Circuit Judges*.

(Filed: November 26, 2013)

_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

Barbara Sullivan appeals the District Court's order awarding ERISA benefits to Lavona Hill. We will affirm.

I

Because we write for the parties, who are well acquainted with the case, we recite only the essential facts and procedural history.

A

From 1972 to 1978, Thomas Sullivan played in 84 games, ran for 3,142 yards, and scored 22 touchdowns for the Philadelphia Eagles and Cleveland Browns. This case comes to us because Thomas attempted an even more difficult feat following his professional football career: he tried to have two wives at the same time. On March 15, 1979, Thomas married Lavona Hill in Maryland. This marriage never ended in divorce, but the parties agree that Thomas and Hill separated sometime in the 1980's.

In 1981, Thomas met Barbara Sullivan when they worked together at an Exxon facility. On March 15, 1986, Thomas and Barbara purported to marry in South Carolina and they lived together as if they were husband and wife for the next sixteen years until Thomas died on October 10, 2002.

Following Thomas's death, Barbara filed for benefits under the NFL's retirement plan (Plan), which provides benefits to a player's surviving spouse, which is defined according to "applicable state law." The Plan began to pay Barbara benefits in November

2

2002. Four years later, Hill contacted the Plan to request benefits, and after some investigation, the Plan suspended payments to Barbara in May 2007 pending a court order. After Hill failed to obtain the requisite court order, the Plan resumed the distribution of benefits to Barbara.

B

In August 2009, Hill sued the Plan in state court, and the Plan removed the case to the District Court. The Plan then filed an interpleader counterclaim against Hill and Barbara. The Plan has deposited $2,700 per month since November 2009 with the Court, and will continue to pay that amount to the prevailing party in this dispute. Following a bench trial, the District Court found Barbara and Thomas's marriage void under South Carolina law and held that Hill was entitled to the benefits. Barbara timely filed a notice of appeal.[1]

II

Barbara raises three arguments on appeal. First, she claims the District Court clearly erred in finding that Thomas and Hill separated around 1983. Second, Barbara contends that her marriage to Thomas was not void pursuant to an exception to South Carolina bigamy law. Finally, she argues in the alternative argument that the District Court should have applied the putative spouse doctrine. We review the District Court's factual findings at the bench trial for clear error, and we subject its legal conclusions to

plenary review. *Sharp v. Johnson*, 669 F.3d 144, 153 (3d Cir. 2012) (citing *Trs. of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 191 (3d Cir. 2003)).

## A

The time of separation is relevant because of an exception found in South Carolina's bigamy law. The relevant statute provides:

> All marriages contracted while either of the parties has a former wife or husband living shall be void. But this section shall not extend to a person whose husband or wife shall be absent for the space of five years, the one not knowing the other to be living during that time, not [sic] to any person who shall be divorced or whose first marriage shall be declared void by the sentence of a competent court.

S.C. Code Ann. § 20-1-80. Thus, if Thomas and Hill separated before March 15, 1981—five years before Thomas purported to marry Barbara—and Thomas did "not know [Hill] to be living during that time," then the subsequent marriage would not be void.

As is discussed in Part II.B, *infra*, the actual date on which Thomas and Hill separated is not material to the outcome of this appeal. Even if it were, however, the District Court did not err. Barbara argued to the District Court that in a social security application, Hill said she and Thomas separated in February 1979, a date that preceded Thomas and Barbara's 1986 putative marriage by more than five years. Barbara argues on appeal that because she met Thomas in 1981, and never learned of Hill, it was error to

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291.

4

find that Thomas and Hill separated in 1983.

At trial, the District Court received Hill's testimony that she and Thomas traveled to South Carolina together periodically in the early 1980s, until Thomas moved to South Carolina alone in 1983. Hill testified she last had contact with Thomas in 1985. The evidence showed that Thomas travelled back and forth from South Carolina during the early 1980s and that he started dating Barbara before finally ending his relationship with Hill. Consequently, the evidence proffered by Hill and Barbara was not inherently contradictory. And even if it had been, the District Court did not err by crediting Hill's testimony over the social security application and the date Barbara first met Thomas. Such determinations are within the purview of the District Court, and "we are not left with the definite and firm conviction that a mistake has been committed." *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 182 (3d Cir. 2010).

B

Ultimately the District Court's finding regarding the separation date was academic because it held, quite correctly, that there was no evidence to find that Barbara and Thomas's putative marriage was rendered legal by an exception to South Carolina's prohibition on bigamy. *See Yarbrough v. Yarbrough*, 314 S.E.2d 16, 18 (S.C. 1984) (citing *Day v. Sec'y of Health & Human Servs.*, 519 F. Supp. 872, 878 (D.S.C. 1981)) ("Once a marriage is shown to exist, the person attacking its validity has the burden of proving invalidity."). Under the bigamy law, a presumption of death arises after the lapse

5

of the five-year period, but only if "evidence [is] introduced that diligent search and inquiry have been made." *Day v. Day*, 58 S.E.2d 83, 85 (S.C. 1950). Barbara introduced no evidence to show that Thomas searched or inquired as to Hill's whereabouts. Consequently, her marriage to Thomas is void under South Carolina law.

## C

Finally, Barbara argues in the alternative that the District Court should have held that South Carolina would adopt the "putative spouse" doctrine. In light of both the potential force of this legal argument and the obvious equities in favor of Barbara as the apparent wife of Thomas during the last sixteen years of his life, we certified this question to the South Carolina Supreme Court. In an opinion dated August 28, 2013, the South Carolina Supreme Court answered the question by concluding: "we decline to adopt the putative spouse doctrine in South Carolina." *Hill v. Bell*, 405 S.C. 423, 426, 747 S.E.2d 791, 793 (S.C. 2013). As the last word on South Carolina law, the Supreme Court's rejection of the putative spouse doctrine precludes Barbara's final argument.

## III

For the reasons stated, we will affirm the judgment of the District Court.